382 So.2d 1030 (1980)
BOUCHER & SLACK CONTRACTORS, INC., and Bronner Investment Company, Inc., a joint venture, Plaintiffs-Appellees,
v.
Harvey McLEAN, Jr., Liquidator of Woodlands of Huntington, Inc., et al., Defendants-Appellants.
No. 14083.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1980.
Rehearing Denied May 13, 1980.
Writ Granted June 23, 1980.
Wilkinson, Carmody, Peatross & Caverlee by Samuel W. Caverlee and Charles B. Peatross, Shreveport, for defendant-appellant, Harvey McLean, Jr., Liquidator of Woodlands of Huntington.
Cook, Clark, Egan, Yancey & King, by Charles G. Tutt, Shreveport, for defendant-appellee, Commercial Nat. Bank.
Wiener, Weiss, Madison & Howell, by James Fleet Howell, Shreveport, for plaintiff-appellee, Bronner Inv. Co., Inc.
Charles E. Tooke, Jr., Shreveport, for plaintiff-appellee, Boucher & Slack Contractors, Inc.
Before PRICE, MARVIN and McCLENDON, JJ.
En Banc. Rehearing Denied May 13, 1980.
PRICE, Judge.
Plaintiff filed suit to enjoin defendant-bank from honoring a draft presented pursuant *1031 to a letter of credit issued to defendant, Woodlands of Huntington, Inc., on plaintiff's behalf. The trial court denied the injunction but ordered defendants to pay the funds into the registry of the court pending judicial determination of whether plaintiff was in default. The liquidator of Woodlands appeals that part of the judgment ordering the funds paid into the registry of the court. We reverse.
Early in 1978 plaintiff, a joint venture composed of Boucher and Slack Contractors, Inc. and Bronner Investment Company, Inc., entered into negotiations with Woodlands for construction of an apartment complex on Woodland's property. As part of the contract negotiations and its ultimate execution, no performance bond was required and it was agreed that plaintiff would obtain a letter of credit from the Commercial National Bank of Shreveport in the amount of $708,000. This letter of credit was issued in favor of Woodlands and provided the following:
For the account of Boucher & Slack Contractors, Inc. and Bronner Investment Co., Inc., a JOINT VENTURE, we hereby authorize you or your transferee to draw on us at sight up to an aggregate amount of $708,000.00, conditioned only that the Drawer on this Letter of Credit or its transferee shall furnish the Bank a sworn affidavit that the sum of the draft is due by Boucher & Slack Contractors, Inc. and Bronner Investment Co., Inc., a JOINT VENTURE, under the provisions and obligations of the Contract between the parties of date January 31, 1978 for the construction of "Woodlands of Huntington," by reason of default on the part of said JOINT VENTURE therein, which affidavit shall be accompanied by a statement of the basis for the claim.
This Credit is irrevocable and transferable. The Credit may be transferred without charge one or more times upon receipt of your written instructions submitted in accordance with the attached transfer form.
Drafts drawn under this Credit must specify the number of the Credit and be presented at this office not later than February 1, 1980.
This Credit sets forth in full the terms of our obligation to you, and such undertaking shall not in any way be modified or amplified by any agreement in which this Credit is referred to or to which this Credit relates, and any such reference shall not be deemed to incorporate herein by reference any agreement.
During the negotiations Woodlands was also concerned about a completion date for construction of the project. Although this question was discussed on several occasions plaintiff refused to agree to a specific date for completion. As a result the contract executed by the parties provided only that plaintiff would complete the project with "due and reasonable diligence."
Construction began in February 1978 and as it progressed plaintiff encountered several problems consisting primarily of adverse weather conditions, lack of adequate access to the property, and difficulties with its subcontractors and its own supervisory personnel. During the summer of 1978, Harvey McLean, Jr., the sole shareholder of Woodlands who had negotiated the contract with plaintiff, made several complaints regarding the delays in completing the various phases of the project. Correspondence regarding these delays was exchanged and on September 29 McLean stated by letter his intentions to assert a claim in excess of $40,000 for alleged loss of rentals and additional administrative expenses.
Construction continued. As each section of the project was completed it was turned over to Woodlands for rental and Woodlands continued to make all progress payments required by the contract. By June 20, 1979, the project was finished except for miscellaneous repairs and corrections and Woodlands furnished plaintiff with a certificate of substantial completion. The additional repair and correction was apparently done and on September 4, 1979, plaintiff received from Woodlands the final payment due under the contract. Although plaintiff had previously requested that the letter of credit be returned at the time of final payment, *1032 it was retained by Woodlands without objection. At this point in time Woodlands had made no further complaints regarding damages for delay.
On July 31, 1979, Woodlands, before final payment, conveyed the entire apartment complex and the land upon which it was built to McLean in his individual capacity. In August 1979 Woodlands was placed in voluntary liquidation with McLean as liquidator.
On September 6, 1979, McLean, in his capacity as liquidator for Woodlands, presented a draft in the amount of $440,127.58 to Commercial National Bank with an attached affidavit stating this amount to be due Woodlands under the contract with plaintiff because of plaintiff's failure to complete the project with "due and reasonable diligence." The damages listed in the affidavit and accompanying statement were itemized as lost rentals and excess interest paid by Woodlands because of its inability to obtain permanent financing until the project was completed.
The bank notified plaintiff of McLean's demand and this suit seeking a preliminary injunction was filed. Upon plaintiff's motion the trial court issued a temporary restraining order prohibiting payment under the letter of credit. After this order was obtained plaintiff also filed a separate demand seeking a declaratory judgment that it had not breached the contract with Woodlands and owed no damages. McLean filed a motion to dissolve the restraining order and to dismiss plaintiff's suit.
After a hearing on the injunction and the motion to dissolve, the trial court held that under the applicable statutes an injunction to prohibit a draw upon a letter of credit may be granted unless (1) the claim providing the basis of the draft is fraudulent; (2) the documents submitted in connection with the draft do not comply with the terms of the letter; or (3) the claim asserted has no basis under law. The court found that the draft and accompanying documents presented by McLean fully complied with the terms of the letter of credit and that since there was a legitimate dispute as to whether plaintiff completed the project with "due and reasonable diligence," the claim made on behalf of Woodlands was not fraudulent or without a basis in law. Consequently the court dissolved the restraining order, denied the injunction sought by plaintiff, and ordered the bank to honor the draft.
However, despite these findings, the court ordered the bank and McLean to pay the amount of the draft into the registry of the court. The court reasoned that since the apartment complex had been transferred from Woodlands to McLean in his individual capacity, the letter of credit was the only substantial asset left in the corporation; and since Woodlands was in liquidation and there would be nothing to prevent the corporation and its liquidator from disbursing these funds, it was possible that there would be no assets in the corporation which could be recouped by plaintiff in the event it was successful on the merits of its demand for declaratory judgment regarding its liability under the construction contract; therefore, this action was necessary to insure protection of the rights of all parties pending final determination of the underlying dispute.
The judgment was later amended on motion of all parties to order the clerk of court to invest the fund in a ninety-day certificate of deposit to be renewed every ninety days until further order. This amendment was apparently designed to allow the fund to draw commercial rather than legal interest and resolve the objections of McLean.
McLean appeals only from that portion of the judgment, as amended, which ordered payment of the amount of the draft into registry of the court. Since plaintiff obviously does not question the correctness of the trial court's refusal to issue the injunction, this appeal presents only one issue:
In the absence of fraud, does a court have discretion to order funds due under a letter of credit deposited into the registry of the court pending the outcome of litigation concerning the alleged breach of the underlying contract?
*1033 Both parties agree that under La.R.S. 10:5-114[1] the bank must honor a draft which complies with the terms of the letter of credit without looking beyond the documentation presented and without determining the merits of the beneficiaries claim on the underlying contract, and that a court may interfere with this obligation to pay only upon proof of fraud on the part of the beneficiary.
McLean argues, however, that the court's action in denying Woodland's access to the fund which is undeniably due under the letter of credit law totally defeats the purpose of a letter of credit and constitutes an unauthorized judicial interference with the payment process. He argues that a letter of credit is a unique type of security device which allows the beneficiary immediate access to cash upon compliance with its terms and thereby allows him to become the stakeholder during the pendency of any disputes regarding the underlying contract; that to allow the court to deny the beneficiary access to the cash due in situations not authorized by the letter of credit law would convert letters of credit to nothing more than surety agreements under which the beneficiary must fully litigate his entitlement to damages before any funds are paid; and that the action of the trial court is tantamount to an unauthorized granting of a preliminary injunction and constitutes an abuse of discretion.
Plaintiff argues that the trial court's action did not interfere with the payment process set forth in the letter of credit law since the draft was honored by the bank; that after the completion of the payment process the trial court possessed the inherent authority to sequester the fund in order to preserve it until the issue of its legal ownership is judicially established; and that the trial court's exercise of this authority should not be disturbed on appeal absent abuse of discretion.
Code of Civil Procedure Article 3573 provides the basis of the court's authority to sequester property which is the subject of litigation. It states:
The court on its own motion may order the sequestration of property the ownership of which is in dispute without requiring security when one of the parties does not appear to have a better right to possession than the other.
Consequently, in order to uphold the action taken by the trial court, we must find that (1) the ownership of the fund paid by the bank pursuant to the letter of credit is in dispute and (2) Woodlands does not appear to have a better right to possession of this fund than plaintiff. We find neither situation to be present.
The Louisiana statutes governing letters of credit (La.R.S. 10:5-101 through 10:5-117) clearly indicate that a letter of *1034 credit creates an obligation on the part of the issuer in favor of the beneficiary which is totally independent of the underlying contract. This view is generally accepted in jurisdictions where the Uniform Commercial Code, the source of the Louisiana statutes, has been adopted. See Intraworld Industries, Inc. v. Girard Trust Bank, 461 Pa. 343, 336 A.2d 316 (1975).
Once the trial court found plaintiff had no right to an injunction and that the bank should honor the draft, Woodlands was then the owner and entitled to the proceeds. Plaintiff's demands against Woodlands, whether based on the underlying contract or the beneficiary's warranty under R.S. 10:5-111(1), constitute separate unliquidated claims and do not render the ownership of the proceeds paid pursuant to the letter of credit a matter of dispute.
For the foregoing reasons the judgment of the trial court ordering defendants to pay the amount of the draft into the registry of the court is reversed and it is ordered that this fund, together with all accrued interest, be paid to Harvey McLean, Jr., as liquidator of Woodlands of Huntington, Inc. Costs of this appeal are assessed to appellees.
NOTES
[1] (1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.

(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title or of security or is forged or fraudulent or there is fraud in the transaction
(a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course and in an appropriate case would make it a person to whom a document of title had been duly negotiated or a bona fide purchaser of a security; and
(b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer or fraud, forgery or other defect not apparent on the face of the document but a court of appropriate jurisdiction may enjoin such honor.
(3) Unless otherwise agreed an issuer which had duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit and to be put in effectively available funds not later than the day before maturity of any acceptance made under the credit.