FIRST ARLINGTON NATIONAL BANK, Plaintiff-Appellant and Cross-Appellee, *v.* GUS STATHIS, Defendant-Appellee and Cross-Appellant—(Denis J. Rintz *et al.*, Defendants).

First District (5th Division)   No. 82—1940

Opinion filed May 27, 1983.

Vincent F. Lucchese and Vihon, Fuchs, Temple & Berman, Ltd., both of Chicago (Vincent F. Lucchese and Robert F. Fuchs, of counsel), for appellant.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from the entry of summary judgment for Gus Stathis (defendant) in an action for declaratory judgment brought to determine the rights and obligations of the parties under a letter of credit issued by the plaintiff bank. Plaintiff contends that the trial court erred in ruling that (1) none of the exceptions contained in section 5—114(2) of the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1979, ch. 26, par. 5—114(2)) excused plaintiff's duty to honor the letter of credit; (2) defendant did not breach any warranties made by him pursuant to section 5—111(1) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 5—111(1)); (3) none of the other warranty sections of the

Code were applicable to the transaction in question; and (4) defendant was entitled to prejudgment interest pursuant to section 2 of "An Act in relation to the rate of interest and other charges in connection with sales on credit and the lending of money" (the Interest Act) (Ill. Rev. Stat. 1979, ch. 74, par. 2)[1] from the date of his demand for payment. In his cross-appeal, defendant maintains that the trial court erred in limiting its award of prejudgment interest to 5%.

In a prior appeal in this case, *First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 413 N.E.2d 1288, we reversed the trial court's entry of summary judgment for plaintiff and remanded for further consideration of defendant's cross-motion for summary judgment. The facts of the transaction in question are set forth in detail in that opinion, and the parties presented no additional evidence after remand; therefore, we shall repeat only such facts as are relevant to the issues herein.

In 1973, defendant agreed to sell certain real estate to Ralph Edgar, Denis Rintz, and Phillip Granidnetti, Jr., and as partial consideration therefor received a promissory note dated March 30, 1973 (the March note), executed by the three purchasers and their wives in the principal amount of $575,000 with an interest rate of 8% on the outstanding principal. The debt was to be secured by a letter of credit in the amount of $575,000 which was to be replaced each year at least 30 days before its expiration date. If the letter of credit was not renewed, or if the purchasers defaulted in the payment of either interest or principal, the balance due was immediately payable without notice.

Plaintiff issued the required letter of credit, to expire May 5, 1974, in exchange for a note executed by Rintz, Edgar, and Granidnetti in the principal amount of $575,000 at 10% interest, secured by certain property, and the pledge of collateral, *i.e.*, a certificate of deposit in the amount of $187,000 owned by Grandinetti and real estate owned by Rintz and Edgar. The letter of credit guaranteed payment of $575,000 to defendant upon default of the March note, provided that his demand was accompanied by the March note, endorsed by him without recourse to the order of plaintiff; any documents securing the note; defendant's notarized statement that the note was due by reason of acceleration and a detailed statement of the nature of the default; defendant's notarized statement that demand had been made on the makers, and the demand was not complied with for a

---

[1]Now codified at Ill. Rev. Stat. 1981, ch. 17, par. 6402.

period of at least 10 days following the demand; and copies of the demand letters.

The makers defaulted on the first payment of interest, due on March 30, 1974, and failed to provide a timely renewal of the letter of credit. On April 23, 1974, Grandinetti, desirous of avoiding litigation concerning the interest due, entered into an agreement with defendant (the Grandinetti agreement). Pursuant thereto, Grandinetti executed a note for one-third of the first interest installment, due June 5, 1974, and a second note for the remaining two-thirds, payable on demand. Defendant agreed to attempt to collect the remaining two-thirds of the interest from the Edgars and Rintzes (Grandinetti's wife was not mentioned) and, if successful, cancel the second note.[2]

On April 25, 1974, defendant sought payment on the letter of credit and presented to plaintiff the documents required by the terms thereof. Plaintiff refused to pay, claiming that, among other defects, the March note did not comply with the letter of credit in that the Grandinetti agreement effectively released Grandinetti's wife from liability on the March note and, as a result, released the other comakers as well by application of section 3—606 of the Code. (Ill. Rev. Stat. 1979, ch. 26, par. 3—606.) It filed a complaint for declaratory judgment and, in granting plaintiff's motion for summary judgment therein and denying defendant's cross-motion, the trial court ruled that plaintiff was not required to honor the letter of credit as a result of the Grandinetti agreement. On appeal, we held that plaintiff could not look beyond the documents presented to the underlying agreement in determining whether to honor the letter of credit. (*First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 809, 413 N.E.2d 1288, 1295.) Since the documents presented complied on their face with the letter of credit (90 Ill. App. 3d 802, 816, 413 N.E.2d 1288, 1299) and there was no fraud arising from the Grandinetti agreement which would justify dishonoring the letter of credit (90 Ill. App. 3d 802, 811, 413 N.E.2d 1288, 1295), plaintiff was required to honor the demand pursuant to section 5—114 of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 5—114), and we reversed the order granting summary judgment to plaintiff and denying it to defendant. However, because plaintiff had raised other arguments in opposition to defendant's motion for summary judgment which were not considered by the trial court in ruling thereon, we remanded the matter for further consideration.

---

[2]This unpaid interest was the subject matter of defendant's counterclaim against the Grandinettis, Edgars, and Rintzes, which is not before us in this appeal.

On remand, the parties agreed that the only remaining issue with regard to defendant's motion for summary judgment was whether he breached any warranties on presentment of his draft for payment under the letter of credit. Plaintiff argued that the Grandinetti agreement, which allegedly released Grandinetti's comakers from liability on the March note, and defendant's failure to deliver to it the personal judgment notes executed by Grandinetti under the agreement, breached warranties made by defendant under sections 5—111, 3—417, 4—207, 7—507, and 8—306 of the Code. (Ill. Rev. Stat. 1979, ch. 26, pars. 5—111, 3—417, 4—207, 7—507, 8—306.) The trial court concluded that our prior opinion barred any consideration of the Grandinetti agreement as grounds for dishonoring the letter of credit.[3] However, it went on to rule that the only applicable warranty was section 5—111(1), and that defendant warranted thereunder merely that the tendered documents complied on their face with the terms of the letter of credit; that this warranty was not breached; and that, in any event, the Grandinetti agreement did not release any of the comakers, contrary to plaintiff's assertion. It further ruled that defendant was entitled to prejudgment interest from April 25, 1974, the date of his demand for payment, at the rate of 5%, "although a greater rate of interest would be more equitable in the present situation." These cross-appeals followed.

OPINION

■ Plaintiff first contends that the trial court erred in ruling that none of the exceptions to an issuer's duty to honor a demand which complies on its face with the terms of the letter of credit excused plaintiff's duty to honor. It relies on section 5—114(2)(b) of the Code

---

[3]Plaintiff's brief raises two issues devoted to a contention that the trial court misconstrued our prior opinion and "unduly restricted the scope of the issues remanded," pointing to this conclusion in support of its argument. However, it is apparent from the record that the trial court placed no restrictions on the arguments of counsel, and both sides extensively briefed and argued the warranty issues as they related to the Grandinetti agreement. Moreover, despite its initial statement, the trial court considered fully all arguments raised by plaintiff with regard to the warranties asserted as discharging its duty to honor the letter of credit and issued a ruling thereon. Therefore, we believe that even if we were to find that the statement in question constituted a misunderstanding of our prior opinion, such error would not be grounds for reversal, since plaintiff has failed to demonstrate any error which "was substantially prejudicial and affected the outcome [in] the trial court." (*Canales v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 773, 778, 416 N.E.2d 303, 308.) Portions of plaintiff's arguments in these two issues are relevant in later issues and will be addressed herein where pertinent.

(Ill. Rev. Stat. 1979, ch. 26, par. 5—114(2)(b)), which provides in relevant part:

"(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Section 7—507) or of a security (Section 8—306) or is forged or fraudulent or there is fraud in the transaction

\* \* \*

(b) \*\*\* as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor."

The trial court held that the warranties under sections 7—507 and 8—306 (Ill. Rev. Stat. 1979, ch. 26, pars. 7—507, 8—306) are inapplicable to the transaction in question and that plaintiff could not relitigate the question of fraud in the transaction, which was decided adversely to it in our prior opinion. Plaintiff apparently concedes the inapplicability of sections 7—507 and 8—306 but maintains that the trial court read section 5—114(2)(b) too restrictively, and that the intent of the drafters was clearly to include not only the warranties arising thereunder but also those arising under sections 3—417 and 4—207 (Ill. Rev. Stat. 1979, ch. 26, pars. 3—417, 4—207). It further argues that because defendant did not disclose the Grandinetti agreement when making presentment, the fraud contemplated by section 5—114(2)(b) was present.

With regard to its first argument, plaintiff cites as its sole authority the official comment to the Code. (Ill. Ann. Stat., ch. 26, par. 5—114, Uniform Commercial Code Comment, at 600 (Smith-Hurd 1963).) However, a careful reading of that commentary in its entirety discloses no such intention to include warranties other than those specifically mentioned in the statute. Therefore, we must look to the general rules of statutory construction to determine the intention of the drafters. The statutory language itself is the best indicator of that intention (*Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 374 N.E.2d 211), and where that language is certain and unambiguous, it must be enforced as enacted (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180) without resort to judicial interpretation or construction (*Rushton v. O'Malley* (1980), 89 Ill. App. 3d 103, 411 N.E.2d 528).

In the instant case, the language used by the legislature is unam-

biguous and leaves no room for expansion by the interpretation. Two code sections are specifically set forth, and had the legislature wished to include others, it could have done so easily, as it did in section 5—111(1) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 5—111(1)). Moreover, even if we were to resort to rules of construction, the most pertinent in the instant situation is that the enumeration of certain exceptions in a statute implies the exclusion of all others. (*People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 414 N.E.2d 731.) Thus, express inclusion of sections 7—507 and 8—306 here would imply that the legislature intended to exclude all other warranty provisions.

■■ Plaintiff further argues that it was excused from honoring the letter of credit under section 5—114(2)(b) by virtue of alleged fraud in the transaction. However, as plaintiff is well aware, we decided this precise issue adversely to it in our prior opinion. (90 Ill. App. 3d 802, 810-11, 413 N.E.2d 1288, 1295-96.) Therefore, the trial court correctly ruled that it was bound by all questions decided, and the issue of fraud in the transaction was no longer open to consideration, at least insofar as section 5—114(2)(b) is concerned. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) Furthermore, on appeal of a case previously before us, we are not at liberty to reexamine issues raised and determined in the former appeal (*Government Employees Insurance Co. v. Dennis* (1967), 90 Ill. App. 2d 356, 232 N.E.2d 750), and plaintiff may not relitigate the merits of this issue (*Turner v. Commonwealth Edison Co.* (1978), 63 Ill. App. 3d 693, 380 N.E.2d 477).[4].

Plaintiff next contends that the trial court erred in ruling that defendant did not breach any warranties made by him under section 5—111(1) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 5—111(1)). It argues that the trial court construed this warranty too narrowly in holding that defendant warranted thereunder merely that the documents submitted complied on their face with the terms of the credit. Plaintiff theorizes that this warranty provision also "protects both the issuer of a letter of credit and its customers from the harsh and limiting effects of the rule that an issuer must honor a demand for payment if the documents appear on their face to conform to the terms of the credit." Therefore, it posits, section 5—111(1) permits it to do

---

[4]We note that for the first time in the lengthy history of this litigation, plaintiff raises in its reply brief the question of whether defendant has waived or is estopped from asserting any claim under the letter of credit. We will not consider different theories or new questions not presented at trial. *Estes Co. v. Employers Mutual Casualty Co.* (1980), 79 Ill. 2d 228, 402 N.E.2d 613; *Frisch Contracting Service Corp. v. Northern Illinois Gas Co.* (1981), 93 Ill. App. 3d 799, 417 N.E.2d 1070.

what section 5—114 forbids; that is, look to the underlying contract between defendant and its customers in determining whether it has a duty to honor the letter of credit.

Section 5—111(1) provides in relevant part that "*** the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with ***." (Ill. Rev. Stat. 1979, ch. 26, par. 5—111(1).) The parties have not cited, nor has our own research discovered, any cases delineating the scope of the phrase "the necessary conditions of the credit." Neither the Illinois nor the official commentary to the Code defines the phrase in question. The official comment states that "[t]he purpose of this section is to state the peculiar warranty of performance made by a beneficiary ***." (Ill. Ann. Stat., ch. 26, par. 5—111, Uniform Commercial Code Comment, at 590 (Smith-Hurd 1963).) The Illinois comment appears to acknowledge an ambiguity in the phrase by stating that "[t]he term 'necessary conditions of the credit' is not a defined one. It presumably includes the genuineness of the documents. Beyond that the cases are not clear." (Ill. Ann. Stat., ch. 26, par. 5—111, Illinois Code Comment, at 590 (Smith-Hurd 1963).) However, two recent decisions in other States imply that section 5—111(1) is at least coextensive with section 5—114.

In *Werner v. A. L. Grootemaat & Sons* (1977), 80 Wis. 2d 513, 259 N.W.2d 310, the court stated, in *dictum,* that an issuer who wrongfully honors may have a remedy against the beneficiary under section 5—111(1). (80 Wis. 2d 513, 524-25 n.22, 259 N.W.2d 310, 315-16 n.22.) Since an issuer wrongfully honors only when it pays on presentation of documents which do not conform on their face to the terms of the credit, a beneficiary warrants under section 5—111(1) that the documents do conform. *Werner* further indicates that a customer would have a breach of warranty action under section 5—111(1) if the issuer were to honor a letter of credit despite the existence of one of the exceptions set forth in 5—114(2)(b), as it is permitted to do under that section without jeopardizing its right to reimbursement. (80 Wis. 2d 513, 524, 259 N.W.2d 310, 315.) The latter interpretation is also evident, although unstated, in *Boucher & Slack Contractors, Inc. v. McLean* (La. App. 1980), 382 So. 2d 1030, 1034, and supported by the official commentary to section 5—114, which states in relevant part:

> "When *** no innocent third parties *** are involved the issuer is no longer under a duty to honor; but *** the issuer if he acts in good faith is given the privilege of honoring the draft

as against its customer, that is to say, with a right of reimbursement against him. \*\*\* In the event of honor, an action by the customer against the beneficiary will lie by virtue of either the underlying contract or Section 5—111(1) of this Article." Ill. Ann. Stat., ch. 26, par. 5—114, Uniform Commercial Code Comment, at 601 (Smith-Hurd 1963).

It appears, then, that the warranties of section 5—111(1) are at least as broad as the circumstances encompassed by section 5—114. Even this interpretation, however, is too narrow to justify denial of summary judgment for defendant, since we have already determined that the documents in question comply on their face with the terms of the letter of credit, and none of the exceptions set forth in section 5—114 are applicable to this transaction.[5] For this reason plaintiff asserts, as noted above, that the warranties of section 5—111(1) are broader in scope and allow the court to go beyond the face of the documents and consider the facts and circumstances of the underlying contract between defendant and its customers. In effect, plaintiff asserts it is not enough that it is protected by its right of reimbursement under section 5—114(3) if it rightfully honors the letter of credit, and by the beneficiary's warranty under section 5—111(1) if it wrongfully honors. It would have us hold that under section 5—111(1) it may also take advantage of any defenses its customers might have to the underlying contract, even where those defenses fall short of the defenses contemplated by section 5—114(2)(b).

■ The obvious flaw in plaintiff's position is that, if adopted, it would convert the letter of credit into a contract of guaranty or suretyship, for it destroys the sole distinguishing feature between them. As our supreme court stated in *Pastor v. National Republic Bank* (1979), 76 Ill. 2d 139, 147, 390 N.E.2d 894, 897:

"Although the use of letters of credit is often referred to as being in the nature of a guaranty or a suretyship arrangement, it does not assume the legal significance of either. Under the letter of credit the issuer is bound in the first instance to pay the beneficiary. It is an individual undertaking of the issuer to pay the beneficiary, and the obligation is not subject to the various defenses available to a guaranty or a surety undertaking."

Thus, under a guaranty, the courts must look to the rights and obliga-

---

[5]This is not to imply any view that an issuer who in good faith honors under circumstances where section 5—114(2)(b) would justify dishonor may thereafter assert its customer's warranty rights against the beneficiary in lieu of its reimbursement rights against the customer upon discovering that the customer is insolvent. That question is not before us, and we express no opinion thereon.

tions of the parties to the underlying contract in determining the rights and obligations of the guarantor, for a true guaranty is a secondary obligation (*Republic National Bank v. Northwest National Bank* (Tex. 1979), 578 S.W.2d 109, 114); whereas, a letter of credit is a primary obligation independent of the underlying transaction (*Professional Modular Surface, Inc. v. Uniroyal, Inc.* (1982), 108 Ill. App. 3d 1046, 440 N.E.2d 177). Therefore, even an agreement among beneficiaries and customers releasing or cancelling the underlying obligation will not affect a beneficiary's right to demand payment on an irrevocable letter of credit. (See *Housing Securities, Inc. v. Maine National Bank* (Me. 1978), 391 A.2d 311.) If we were to accept plaintiff's argument, the stringent duty to honor contained in section 5—114(1) would be completely abrogated, destroying the basic purpose of a letter of credit "to eliminate the risk to the beneficiary that the customer will refuse or halt payment because of alleged deficiencies in the beneficiary's performance." *O'Grady v. First Union National Bank* (1978), 296 N.C. 212, 232, 250 S.E.2d 587, 600.

■ For these reasons, we believe that the basic warranties under section 5—111(1) are that the documents comply on their face with the terms of the letter of credit, and that none of the exceptions set forth in section 5—114(2)(b) are present. The warranty provisions do not authorize the issuer to assert defenses which its customer might have to the underlying contract. We need not determine under the facts before us whether other warranties are encompassed by the provision that "the necessary conditions of the credit have been complied with."

We turn next to defendant's assertion of error in the trial court's ruling that defendant did not breach any other warranties under the Code. Section 5—111(1) provides that the warranties contained therein are "in addition to any warranties arising under Articles 3, 4, 7 and 8." (Ill. Rev. Stat. 1979, ch. 26, par. 5—111(1).) Plaintiff contends that the warranties arising under sections 3—417 and 4—207 (Ill. Rev. Stat. 1979, ch. 26, pars. 3—417, 4—207) relating to the presentment and transfer of negotiable instruments are applicable to the present situation because defendant was required to transfer the March note to it. It argues that defendant has breached thereunder his warranties that he has good title to the instrument, that the transfer is otherwise rightful, and that no defense of any party is good against him.

Initially, we note that the warranties made under sections 3—417 and 4—207 are identical in their terms, except that section 3—417 is applicable to one who obtains payment or transfers an instrument and

receives consideration therefor, while section 4—207 applies to customers and collecting banks that obtain payment or transfer for consideration. It is unclear to us why plaintiff persists in its argument that both are applicable here, since it admits that the warranties are the same. Nevertheless, it is our view that section 4—207 is obviously inapplicable to the present situation, since defendant is neither a collecting bank as defined in section 4—105(d) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 4—105(d)) nor a customer as defined in section 4—104(e) (Ill. Rev. Stat. 1979, ch. 26, par. 4—104(e)).

■■ With regard to section 3—417, we note that it is applicable to "[a]ny person who transfers an instrument and receives consideration." (Ill. Rev. Stat. 1979, ch. 26, par. 3—417(2).) It is established that these warranties are not made by one who does not receive consideration. (*Oak Park Currency Exchange, Inc. v. Maropoulos* (1977), 48 Ill. App. 3d 437, 363 N.E.2d 54.) Plaintiff posits that if it were to pay defendant's demand, he would receive consideration for the March note. However, plaintiff's obligation to pay is unrelated to the March note; it is obligated to pay under the letter of credit, and will pay on the draft presented as provided in the letter of credit. If section 3—417 has any application at all in this situation, it is to that draft, not to the underlying note, and plaintiff has not pointed to any warranties breached by defendant's presentment of the draft for payment.

■■ Furthermore, it is our view that plaintiff is not injured in any way by the alleged inability to recover on the March note. Since we have determined that it must honor the letter of credit, plaintiff has a right of reimbursement reinforced by a secured note at 10% interest. Surely that means of recovery is preferable to an unsecured, defaulted note bearing 8% interest. In addition, even assuming *arguendo* that defendant made the warranty asserted under section 3—417, we do not believe that there are any defenses good against him. Plaintiff argues that defendant's alleged release of Mrs. Grandinetti from liability for the accrued interest released Mrs. Rintz and Mrs. Edgar[6] from liability on the March note pursuant to section 3—606 of the Code. (Ill. Rev. Stat. 1979, ch. 26, par. 3—606.) However, that section provides in relevant part that "[t]he holder discharges any party to the instrument *to the extent that* *** the holder *** releases

---

[6]Grandinetti, Rintz, and Edgar, as comakers, are not protected by this provision. (*Wohlhuter v. St. Charles Lumber & Fuel Co.* (1975), 62 Ill. 2d 16, 338 N.E.2d 179.) The parties apparently agree that the three wives are accommodation makers; as such, they are protected by section 3—606 if it is otherwise applicable. See *Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 412 N.E.2d 1131.

or agrees not to sue any person against whom the party has \*\*\* a right of recourse \*\*\*." (Emphasis added.) The phrase "to the extent that" indicates that a release may be *pro tanto*, and courts considering the phrase have so held, whether the release was the result of impairment of the right of recourse (*Provident Bank v. Gast* (1979), 57 Ohio St. 2d 102, 386 N.E.2d 1357) or impairment of collateral (*Farmers State Bank v. Cooper* (1980), 227 Kan. 547, 608 P.2d 929). Thus, it appears that when the person against whom a right of recourse is held is partially discharged, others who are only secondarily liable are also discharged, but only to the extent that their rights have been impaired.

In the instant case, the alleged release of Mrs. Grandinetti arises from the omission of her name from the following paragraph of the Grandinetti agreement:

"4. That said judgment note for $32,515.11 is being executed and delivered by GRANDINETTI for the purpose of indemnifying STATHIS with regard to the aforesaid balance of interest due him and STATHIS hereby agrees as follows:

(a) That he shall pursue \*\*\* RALPH EDGAR, JUDY EDGAR \*\*\* DENIS J. RINTZ and MARILYN RINTZ \*\*\* for the collection of said balance of interest in the sum of $32,515.11 \*\*\*."

Such a release, however, would only relieve Mrs. Grandinetti of liability for the $32,515.11 in interest. It follows that the other accommodation makers would be released only to the extent that their right of recourse against Mrs. Grandinetti is impaired; that is, on two-thirds of the first interest installment. Since the paragraph in question does not purport to release Mrs. Grandinetti from liability on the note, it could not release Mrs. Rintz or Mrs. Edgar thereon.

Plaintiff has made herein a number of assertions unsupported by pertinent citations to authority or argument as required by Supreme Court Rule 341(e)(7) (73 Ill. 2d R. 341(e)(7)). First, in arguing that it was excused from honoring by virtue of defendant's breach of warranties under section 5—111, plaintiff maintained that defendant was obliged to transfer to it "the whole note," including the accrued interest which was the subject matter of the Grandinetti agreement. It cited four cases in support of its proposition that it, rather than defendant, was entitled to that interest—all of which were totally inapplicable and, if they had any value, supported defendant's position. Moreover, plaintiff failed to cite authority for its contention that the interest was unpaid when it received the March note, although defendant admittedly took two notes as payment of accrued interest

*before* transferring the March note to plaintiff. Next, plaintiff states that defendant breached three warranties under section 3—417; *i.e.*, that no defense was good against him, that he had good title to the March note, and that the transfer was otherwise rightful. Despite this assertion, plaintiff has neither cited authority nor presented arguments with regard to the latter two warranties. Finally, plaintiff makes the conclusory statement, unsupported by argument or citation, that the Grandinetti agreement, which concerned solely the payment of accrued interest, constituted an extension of time for payment of the March note. It argues that this alleged extension of time released the accommodation makers under section 3—606, thus breaching defendant's warranties under section 3—417, but apparently expects us to take the underlying premise on faith. It is unnecessary for us to address any of these arguments, since the first is disposed of by our determination that plaintiff may not look to the underlying agreement in deciding whether to honor the letter of credit, and the latter two are irrelevant since we have ruled that section 3—417 is inapplicable to the present transaction. However, even if those arguments were not so disposed of, we would be justified in deeming them waived (*Department of Transportation v. Association of Franciscan Fathers* (1981), 93 Ill. App. 3d 1141, 418 N.E.2d 36) for, as one court aptly stated, "a reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research" (*Williamson v. Opsahl* (1981), 92 Ill. App. 3d 1087, 1089, 416 N.E.2d 783, 784).

■ Finally, plaintiff contends that the trial court erred in awarding defendant prejudgment interest. It correctly notes that such interest is recoverable only on the basis of contract or statute. (*Neubert v. Foxworthy* (1979), 71 Ill. App. 3d 438, 389 N.E.2d 898.) The letter of credit in the instant action did not provide for interest, but section 2 of the Interest Act provides in part that "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; *** and on money withheld by an unreasonable and vexatious delay of payment." (Ill. Rev. Stat. 1979, ch. 74, par. 2.) It is plaintiff's position that because there was a "good faith dispute" over its liability, it could not be said that the money was due until that dispute was resolved. Plaintiff argues that the earliest date from which an award would be proper is May 1, 1981, the date our mandate issued in the prior opinion, and not April 25, 1974, the date defendant made demand for payment.

It is established that the existence of a good faith defense affects only that portion of the statute which relates to unreasonable or vexatious delay (*KFK Corp. v. American Continental Homes, Inc.* (1979), 71 Ill. App. 3d 304, 389 N.E.2d 232, *cert. denied* (1980), 445 U.S. 904, 63 L. Ed. 2d 320, 100 S. Ct. 1081) and has no applicability to money due under an instrument of writing if the amount due thereunder is fixed or readily ascertainable (*Cushman & Wakefield of Illinois, Inc. v. Northbrook 500 Limited Partnership* (1983), 112 Ill. App. 3d 951, 445 N.E.2d 1313; *Technical Representatives, Inc. v. Richardson-Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 438 N.E.2d 599; *Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401, 359 N.E.2d 797; *John Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 339 N.E.2d 529).

An instrument of writing has been defined as a writing which itself creates an indebtedness and is similar in effect to a bond, bill, or promissory note (*Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 342 N.E.2d 758), and plaintiff has not contended here that a letter of credit is not such a writing, nor does it argue that the amount due thereunder is not fixed or readily ascertainable. Therefore, the existence of any good faith dispute is immaterial, and the trial court properly awarded interest from the date of demand.

■ In his cross-appeal, defendant maintains that the trial court erred in awarding him only 5% interest, and asks that we increase that award to 8%. He asserts that the rate of interest here is governed not by section 2 of the Interest Act, the basis on which the court granted interest, but by section 5—115 of the Code, which provides that upon wrongful dishonor the person entitled to honor may recover from the issuer the face amount of the draft or demand and interest. (Ill. Rev. Stat. 1979, ch. 26, par. 5—115.) Defendant acknowledges that section 5—115 does not state the rate of interest to be paid, but argues that section 1—106 of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 1—106),[7] which mandates that he "be put in as good a position as if the other party had fully performed," requires that he receive "fair compensation."

Defendant cites no authority in support of his position, and we note that while a number of courts have awarded prejudgment interest in cases involving the wrongful dishonor of a letter of credit, most

---

[7]Applicable to letters of credit pursuant to section 5—103(4) (Ill. Rev. Stat. 1979, ch. 26, par. 5—103(4)).

either fail to state the rate of interest allowable (*New York Life Insurance Co. v. Hartford National Bank & Trust Co.* (1977), 173 Conn. 492, 378 A.2d 562) or fail to explain how the amount allowed was arrived at (*Toyota Industrial Trucks USA, Inc. v. Citizens National Bank* (3d Cir. 1979), 611 F.2d 465; *Board of County Commissioners v. Colorado National Bank* (Colo. App. 1979), 607 P.2d 1010, *aff'd in part, rev'd in part on other grounds* (Colo. 1981), 634 P.2d 32). The only cases which have set forth the basis for recovery of interest have referred to either the "legal" rate of interest (*Housing Securities, Inc. v. Maine National Bank* (Me. 1978), 391 A.2d 311) or a general interest statute similar to section 2 of the Interest Act (*Republic National Bank v. Northwest National Bank* (Tex. 1978), 578 S.W.2d 109). Defendant argues that this rate is "inequitable"; *i.e.*, that it does not "put him in as good a position as if the other party had performed." However, since 8% as an equitable amount could only have been arrived at on this record by pure speculation, it appears that the trial court's only recourse was to apply the rate provided in the Interest Act. *Cf. Sanders v. John Nuveen & Co.* (7th Cir. 1975), 524 F.2d 1064, *vacated on other grounds* (1976), 425 U.S. 929, 48 L. Ed. 2d 172, 96 S. Ct. 1659.

For the foregoing reasons, the orders of the trial court are affirmed.

Affirmed.

WILSON, P.J., and LORENZ, J., concur.