1998 OK CIV APP 100

**D.J. COPPLE, Appellant,**

v.

**BOATMEN'S FIRST NATIONAL BANK OF OKLAHOMA, and Bank IV Oklahoma, N.A., Appellees,**

and

**AMERIRESOURCE GROUP, INC., Defendant.**

**No. 90528.**

Court of Civil Appeals of Oklahoma, Division No. 2.

May 5, 1998.

Rehearing Denied June 8, 1998.

Jon M. Masters, Oklahoma City, Oklahoma, for Appellant.

Joe E. Edwards, Joel W. Harmon, Oklahoma City, for Appellees.

## OPINION

BOUDREAU, Judge.

¶1 D.J. Copple appeals an order of the district court denying a new trial in her action against Bank IV Oklahoma, N.A., and Boatmen's First National Bank of Oklahoma for improperly dishonoring her check. The issue on appeal is whether a substantial controversy exists as to any material fact which would preclude the entry of summary judgment. We hold that such a substantial controversy does not exist with respect to Copple's claim against Boatmen's, but does exist with respect to her claim against Bank IV. Accordingly we affirm in part, reverse in part, and remand with instructions.

¶2 On August 24, 1995, AmeriResource issued a check for $2,500 payable to CCSI and written on its Boatmen's account. On the next day, David Nink transferred the check to Copple, who deposited it in her Bank IV account. Copple withdrew $2,500 from her account and delivered the money to David Nink.

¶3 Bank IV submitted the check for collection to Boatmen's. On August 28, 1995, Bank IV received payment on the check from Boatmen's. On February 9, 1996, Boatmen's customer, AmeriResource, requested a refund, alleging that the check had been improperly endorsed. Boatmen's then charged the amount of the check back to Bank IV. On March 1, 1996, Bank IV charged back the amount of the check against Copple's account.

¶4 Copple sued Bank IV, Boatmen's, and AmeriResource. Bank IV and Boatmen's filed motions to dismiss which the trial court sustained. Copple requested a new trial. The court overruled the motion for new trial and certified the matter for appeal pursuant to 12 O.S. Supp.1997 § 994, although Copple's claim against AmeriResource remained unresolved.

### STANDARD OF REVIEW

¶5 When a motion to dismiss for failure to state a claim upon which relief can be granted includes matters outside the pleadings and those matters are not excluded by the court, the motion is treated as one for summary judgment. 12 O.S.1991 § 2012(B); *Washington v. State ex rel. Dep't of Corrections,* 1996 OK 139, ¶11, 915 P.2d 359, 361. Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Davis v. Leitner,* 1989 OK 146, ¶9, 782 P.2d 924, 926. "In reviewing the grant or denial of summary judgment all inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to the party opposing the motion." *Id.*

¶6 Although a trial court, in considering a motion for summary judgment, considers factual matters, the ultimate decision is a purely legal determination: whether one party is entitled to judgment as a matter of law because there are no material disputed facts. *Carmichael v. Beller,* 1996 OK 48, ¶2, 914 P.2d 1051, 1053. Therefore, our standard of review of a trial court's grant of summary judgment is *de novo. Id.*

### WAS COPPLE A "PERSON ENTITLED TO ENFORCE" THE CHECK?

¶7 When Copple transferred the check to Bank IV, she made certain transfer warranties under Article 4 of the Uniform Commercial Code (UCC), 12A O.S.1991 and Supp. 1997 §§ 4–101 through 4–504. Specifically, section 4–207(a) provides in part: "A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that: (1) The warrantor is a person entitled to enforce the item. . . ." Accordingly, Copple warranted to Bank IV that she was a "person entitled to enforce" the check.

¶8 The question necessarily arises: Who is "a person entitled to enforce the item"? Section 3–301 provides in part: " 'Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder. . . ." 12A O.S.1991 § 3–301.

¶ 9   In determining whether Copple is a holder of the instrument, we must turn to section 1–201(20) of the UCC, which provides in part: " 'Holder' with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession. . . ."  12A O.S. Supp.1997 § 1–201(20).  Since this check was not a bearer check, but an order check, and Copple was not the identified person in possession, she was clearly not a holder of the instrument.

¶ 10   Since Copple was not a holder, we must determine whether she was a nonholder in possession of the instrument who had the rights of a holder.  To make this determination, we must identify what rights Copple received as transferee of the check from David Nink. Section 3–203 of the UCC governs the transfer of instruments.  Subsection (b) provides in part: "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course. . . ."  12A O.S.1991 § 3–203.

¶ 11   The question then remains: Did David Nink have the rights of a holder of the check that he transferred to Copple?  The check in controversy was made payable to the order of CCSI. The record on appeal does not establish the nature of CCSI's business association.  If its business form is anything other than a sole proprietorship, it can only act through its officers or agents.  See East Cent. Okla. Elec. Coop. v. Oklahoma Gas & Elec. Co., 1973 OK 3, ¶ 13, 505 P.2d 1324, 1327.  In this case, CCSI necessarily had to authorize certain individuals to act as its representatives in handling its negotiable instruments.

¶ 12   If David Nink possessed the order check as an authorized representative of CCSI, i.e., as a holder, Copple became a nonholder who acquired the rights of a holder when he transferred the order check to her.  In that case, she was also a "person entitled to enforce" the instrument.  On the other hand, if David Nink did not possess the check as an authorized representative of CCSI, he was not a holder, and Copple, upon transfer, was not a nonholder who acquired the right of a holder.  In that case, she breached her transfer warranties to Bank IV because she was not a "person entitled to enforce" the instrument.

¶ 13   However, the summary judgment record on appeal is completely devoid of any evidence of the relationship between David Nink and CCSI. We are unable to determine whether David Nink was acting as a representative of CCSI. Until some evidentiary light is shed on this material issue of fact, it is impossible to determine whether Copple was a "person entitled to enforce" the check.

## DID BANK IV HAVE AUTHORITY TO CHARGE BACK THE CHECK TO PLAINTIFF'S ACCOUNT?

¶ 14   Copple contends that Bank IV, the collecting bank, was without authority to charge back the check to her account.  We agree.  Unless a contrary intent clearly appears, the status of a collecting bank is that of an agent or sub-agent for the owner of the item.  12A O.S.1991 § 4–201.  If a collecting bank has made a provisional settlement for an item with its customer, the bank has a right to charge back or obtain a refund if it does not itself receive final payment.  12A O.S.1991 § 4–214(a).  However, that right terminates "if and when a settlement for the item received by the bank *is or becomes final*."  *Id.* (Emphasis added).

¶ 15   In determining when a settlement becomes final, section 4–215 provides: "An item is finally paid by a payor bank when the bank has first done any of the following: (1) Paid the item in cash. . . ."  12A O.S.1991 § 4–215(a).  If a collecting bank receives a settlement for an item which is or becomes final, the bank is accountable to its customer for the amount of the item and any provisional credit given for the item becomes final.  12A O.S.1991 § 4–215(d).  "When the credit given by it becomes final, in the usual case its agency status terminates and it becomes a debtor to its customer for the amount of the item."  12A O.S.1991 § 4–215 (1991 Addition, Comment 10).

¶ 16   Bank IV, the collecting bank, acknowledged that Boatmen's, the payor bank,

paid the item in cash on August 28, 1995, three days after the check was credited to the account of Copple. Accordingly, August 28, 1995, marked the date when the settlement Bank IV received became final and its right to charge back or obtain a refund terminated. Bank IV, as collecting bank, had no right, pursuant to Article 4, to charge back the check to Copple's account on March 1, 1996, more than six months after the item was finally paid by Boatmen's, the payor bank.

¶ 17 However, this holding does not leave Bank IV without a remedy. When Copple transferred the check to Bank IV, she warranted, pursuant to section 4–207(a), that she was "a person entitled to enforce the item." If this was not so, Bank IV has a claim against Copple for breach of her transfer warranties.

### PLAINTIFF'S CLAIM AGAINST THE PAYOR BANK

¶ 18 Copple, however, has no claim against Boatmen's, the payor bank. Boatmen's settled for the item when it paid the item in cash on August 28, 1995. While it appears that Boatmen's, for whatever reason, charged the check back to Bank IV,[1] this is a matter between the payor bank and the collecting bank.[2] Copple has no claim against Boatmen's, the payor bank.

### SUMMARY

¶ 19 We hold that the trial court correctly granted summary judgment to Boatmen's, the payor bank. However, we hold that the trial court erred when it granted summary judgment to Bank IV, the collecting bank, because a substantial controversy exists as to the material fact of whether Copple was a "person entitled to enforce" the check. Finally, we hold that Bank IV, as collecting

bank, had no right, pursuant to Article 4, to charge back the check to Copple's account on March 1, 1996, more than six months after the item was finally paid by Boatmen's, the payor bank.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

¶ 20 TAYLOR, C.J., and GOODMAN, P.J., concur.

---

1. It appears that the circumstances under which a payor bank that has made a timely settlement for an item may return the item and revoke the settlement are not present here. Section 4–301(a) of the UCC provides, "If a payor bank settles for a demand item other than a documentary draft presented otherwise than for immediate payment over the counter before midnight of the banking day of receipt, the payor bank may revoke the settlement and recover the settlement if, before it has made final payment and before

its midnight deadline, it: (1) Returns the item; or (2) Sends written notice of dishonor or nonpayment if the item is unavailable for return." 12A O.S.1991 § 4–301(a).

2. Boatmen's, as the payor bank, may have a claim against Bank IV, the collecting bank, for breach of its presentment warranties. 12A O.S. 1991 § 4–208.