944 So.2d 1031 (2006)
Raymond J. LUCAS, Appellant,
v.
BANKATLANTIC, Appellee.
No. 4D05-2285.
District Court of Appeal of Florida, Fourth District.
June 21, 2006.
Sean P. Sheppard of Scott & Sheppard, P.A., St. Augustine, for appellant.
Jeremy J. Hart, Barbara Viniegra, and Gregor J. Schwinghammer, Jr. of Gunster Yoakley & Stewart, P.A., Miami, for appellee.

ON MOTION FOR REHEARING
GROSS, J.
We grant BankAtlantic's motion for rehearing, withdraw our opinion issued April *1032 5, 2006, and substitute the following in its place.
Raymond Lucas appeals the trial court's entry of summary final judgment in favor of BankAtlantic. We reverse, holding that an issue of fact remains as to whether Lucas "transfer[red]" a check within the meaning of section 674.207, Florida Statutes (2004),[1] so that he is responsible to the bank for the amount of a stolen and altered check, which was deposited into an account that Lucas maintained at the bank.
Lucas is an attorney who maintained a trust account at BankAtlantic. Between April and May of 2003, Lucas entered into an agreement with persons in Africa. The deal provided that Lucas would apply for a loan, deposit the proceeds in his escrow account, and ultimately transfer the money to the individuals in Africa. For his services, Lucas was to keep 3% of the proceeds.
On or about May 9, 2003, a $65,800 check drawn on JP Morgan Chase and payable to Lucas was deposited in Lucas's BankAtlantic account. Nothing in the record identifies the person who deposited the check. Although the check was payable to "Raymond Lucas" and had his account number written on it, the endorsement on the back of the check was in the name of "Raymond Cohen." JP Morgan paid the check and BankAtlantic credited Lucas's account with the proceeds. Between May 14 and May 19, 2003, Lucas withdrew all of the $65,800 by cashing several checks made payable to himself. Lucas then wired a portion of these funds to the individuals in Africa, keeping a share for his "commission."
On or about July 7, 2003, JP Morgan informed BankAtlantic that the $65,800 check had been altered and stolen and made a demand for reimbursement. The drawer of the check was the Cohoes City School District. The original amount of the check, $19.18, had been raised to $65,800, the date changed from April 21, 2003 to May 2, 2003, and the payee altered from School-Link Technologies to Lucas. Because it was liable to JP Morgan under Florida's Uniform Commercial Code, BankAtlantic paid $65,800 to JP Morgan. This appeal concerns BankAtlantic's attempt to recover this money from Lucas.
BankAtlantic filed a three-count amended complaint against Lucas. Count I stated that it was "brought pursuant to § 674.207" and sought recovery for breach of a transfer warranty under the Uniform Commercial Code, Chapters 673 and 674, Florida Statutes (2004).
BankAtlantic moved for partial summary judgment on its Code claim. In opposition to the motion, Lucas filed an affidavit stating that: 1) he never personally deposited the check; 2) he did not personally indorse the check; 3) he never authorized anyone else to deposit the check; and 4) he had expected a wire transfer in the same amount, and not a check.
The circuit court granted BankAtlantic's motion for partial summary judgment. On the bank's motion, the court dismissed the remaining counts of the complaint without prejudice and entered final judgment in BankAtlantic's favor for $74,835.33, the amount of the altered check plus prejudgment interest.
Summary judgment is proper *1033 only when there are no genuine issues of material fact conclusively shown from the record and the movant is entitled to judgment as a matter of law. All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available. Reeves v. N. Broward Hosp. Dist., 821 So.2d 319, 321 (Fla. 4th DCA 2002) (citation omitted). The standard of review of an order granting summary judgment is de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Shreffler v. Philippon, 873 So.2d 1280, 1281 (Fla. 4th DCA 2004).
Lucas correctly contends that summary judgment was inappropriate because his affidavit raised disputed issues of fact as to whether he was a "customer" who "transfer[red] an item" within the meaning of section 674.207(1), Florida Statutes (2004).
Section 674.207(1) provides:
(1) A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that:
(a) The warrantor is a person entitled to enforce the item;
(b) All signatures on the item are authentic and authorized;
(c) The item has not been altered;
(d) The item is not subject to a defense or claim in recoupment . . . of any party that can be asserted against the warrantor; and
(e) The warrantor has no knowledge of any insolvency proceeding commenced with respect to the maker or acceptor or, in the case of an unaccepted draft, the drawer.
BankAtlantic contends that the section 674.207(1) warranty is solely "activated by the transferor receiving consideration from the transferee;" the bank argues that "[t]he fact that the Check was deposited to and credited to Lucas' Account was sufficient to trigger his obligations" under section 674.207. The bank's position ignores the language of the statute, which requires that a customer both "transfer[ ] an item" and receive "a settlement or other consideration" to activate the statutory warranty.
Neither of the two cases cited by BankAtlantic supports the proposition that a customer's receipt of funds in the customer's bank account, without more, activates the section 674.207(1) warranty. Perez v. Charter One FSB, 298 A.D.2d 447, 748 N.Y.S.2d 392, 393 (N.Y.App.Div.2002), upheld a summary judgment in favor of a bank and against a customer on "UCC 3-417 and 4-207" warranty claims, referring to "the customer's deposit of a check bearing a prior forged endorsement." From this language, it appears that the customer was also the transferor of the check. First Arlington National Bank v. Stathis, 115 Ill.App.3d 403, 71 Ill.Dec. 145, 450 N.E.2d 833, 840 (1983), applied a version of "section 4-207" with wording different than that of section 674.207(1).[2]
Cases enforcing a section 674.207 warranty typically involve a customer who made the deposit of a questionable check into the customer's account. See, e.g., Copple v. Boatmen's First Nat'l Bank of Oklahoma, 958 P.2d 820, 821 (Okla.Civ. App.1998); Kelton Motors, Inc. v. Phoenix of Hartford Ins. Cos., 522 F.2d 728, 729 (2d Cir.1975). In such circumstances, there is no question that the customer has *1034 transferred an item within the meaning of section 674.207(1).
Lema v. Bank of America, N.A., 375 Md. 625, 826 A.2d 504 (2003), involves facts remarkably similar to this case. There, the Maryland Supreme Court indicated that a 4-207 transfer warranty was inapplicable to a bank's customer who was not involved in the deposit of an altered check into his account, even though the customer withdrew and disposed of the funds attributable to the check.
The Lema facts crystallized in a bench trial. Lema was an accountant with two accounts at Bank of America. Willy Amuli, a former client and friend of Lema's, deposited a $63,000 check payable to Lema into one of Lema's accounts at Bank of America; the check was drawn on an account at the Bank of New York. Lema withdrew the funds and gave them to Amuli in seven different transactions. Id. at 628, 826 A.2d 504.
The Bank of New York notified the Bank of America that the amount of the check had been altered from $3,000 to $63,000. Id. at 629, 826 A.2d 504. The Bank of America returned $60,000 to the Bank of New York and charged back Lema's account for $60,000. Lema responded by filing suit. At trial, Lema disclaimed responsibility for the altered check:
Lema testified that he had no knowledge of the altered check, that he did not authorize Amuli to deposit it into his account, and that he did not know it was made payable to [Lema's company]. According to Lema, he first noticed a substantial increase in the balance of his [company] account in late November of 1999. Lema then learned from Amuli that his friend had deposited a check into Lema's account. Amuli told Lema that the check was to be used to support the children of a former president of Zaire who were living in the United States and explained that he deposited the check into Lema's account because Amuli did not have a bank account of his own.
Id. at 630, 826 A.2d 504.
The trial court apparently found Lema to be credible, because it entered judgment in his favor for $60,000 plus interest. The trial court rejected the bank's argument that "Lema was nonetheless liable on the check because he ratified it by his conduct and had breached certain warranties provided for in the UCC." Id. at 631, 826 A.2d 504.
In an unreported opinion, the intermediate appellate court reversed, ruling that the deposit agreement between the bank and Lema authorized the bank's charge back. Id. The Maryland Supreme Court affirmed, holding that the customer agreement, which "altered the effect of Section 4-214 of the UCC," "entitled Bank of America to debit Lema's accounts for $60,000, the difference between the true amount of the check deposited by Amuli and its altered amount." Id. at 632, 826 A.2d 504.
Central to the holding in Lema is the assumption that the section 4-207 warranty did not apply because "Lema did not himself transfer the altered check." Id. at 642, 826 A.2d 504. Had section 4-207 been applicable, then the Lema court could have decided the case on that basis, without resorting to the complex analysis of how the customer agreement interacted with the Uniform Commercial Code. The Maryland court read the statute as applying to a customer "who transfers an item and receives consideration." Id. (emphasis added). The trial court's finding of fact, which was binding on the appellate courts, was that Lema had not transferred the check. The Maryland Supreme Court did not rule that this conclusion was legal error. Lema thus supports an interpretation *1035 of section 674.207(1) that requires both a customer's "transfer[ ]" of a check and receipt of "consideration" to trigger the statutory warranty.
Lucas's defense is almost identical to that of Lema. He claims that he expected a wire transfer and knew nothing of the check and how it came to be deposited in his account.
The issue on remand will be whether Lucas can be held responsible for the transfer of the stolen and altered check. Section 674.207(1) refers to the "transfer[ ]" of "an item." The definition of an "item" includes an "instrument." § 674.104(1)(i), Fla. Stat. (2004). The check here at issue is an "instrument." § 673.1041(6), Fla. Stat. (2004). Section 673.2031(1), Florida Statutes (2004), provides that "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." We see nothing in the code or section 674.207(1) which requires a customer to be the one who physically delivers or deposits a check into a bank account for the section to be applicable. On remand, BankAtlantic may attempt to tie Lucas to the deposit of the check by agency, conspiracy, or other similar theory. If BankAtlantic proves that Lucas is bound by a section 674.207(1) warranty, then it will establish Lucas's "strict contractual liability" to the bank, as to which the bank's negligence is no defense. Perez, 748 N.Y.S.2d at 393.
Reversed and remanded.
STONE and MAY, JJ., concur.
NOTES
[1] In its motion for rehearing, the bank correctly observes that its action in the trial court was based on section 674.207. We should not have relied on sections 673.4041 and 673.4161, Florida Statutes (2004), to decide this case in the original opinion, because the bank did not rely upon these statutes in the circuit court.
[2] Section 674.207(1) has also been rewritten. Chapter 92-82, section 25, Laws of Florida, rewrote section 674.207, effective January 1, 1993. See § 674.207, Fla. Stat. Ann. (2005), Historical and Statutory Notes.