**Fisher G. DORSEY et al., Appellants,**

v.

**HOUSTON NATIONAL BANK, Houston, Texas, et al., Appellees.**

**No. 3749.**

Court of Civil Appeals of Texas.

Waco.

July 14, 1960.

Rehearing Denied Sept. 15, 1960.

Fred W. Moore and Donald O. Baker, Houston, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, W. H. Vaughn, Jr., Billingsley & Barstow, Houston, for appellees.

WILSON, Justice.

Appellants sought recovery against appellee banks for the amount of several hundred checks paid by the banks over a three year period under forged endorsements. The controlling question is whether the checks were bearer instruments under Sec. 9, subd. 3 of the Uniform Negotiable Instruments Act, Art. 5932, Vernon's Ann.Civ. Stats. It is of first impression in Texas.

Appellant authorized its checks to be paid, for our purposes, on the joint sig-

natures of its payroll clerk and comptroller. The clerk, who was authorized to sign the checks, made them payable to former employees, and after signing them, procured the signature of the comptroller, who was unaware of the fraudulent scheme; forged the endorsement of the payee, cashed the checks and converted the proceeds. No person connected with appellant, other than the faithless clerk, was aware that the payees had no right to the checks or the proceeds. The court disregarded the jury verdict, including findings that appellants' negligence proximately caused the loss; and rendered judgment for appellees on the ground the instruments, although nominally payable to order of the payees, were bearer instruments as a matter of law. The effect of appellants' points is to challenge this conclusion.

The material language of the statute is, "The instrument is payable to bearer: * * 3. when it is payable to the order of a fictitious or nonexisting person, and such fact is known to the person making it so payable".

■ That payees, who are real persons actually in existence, may be "fictitious" persons under this subsection is too well settled to require comment. The intention of the person making the checks "so payable" that the payees have no interest in the instrument, is determinative. 118 A.L.R. 25; 10 C.J.S. Bills and Notes § 129, p. 581; 7 Am.Jur., Sec. 97, p. 840; Britton, Bills and Notes (1943) Sec. 149, pps. 696–702. This case turns on a determination of who is "the person making it so payable." If it is the false clerk, the solution is simple, and the judgment is correct; if it is the innocent comptroller whose joint signature was required, the problem is more complex.

We have examined each of the cases relied on by appellants as supporting their contention that the knowledge and intent of the fraudulent employee does not govern. These cases, with one exception, fall into two categories: (1) those in which the fraudulent agent did not sign the instrument for the drawer, and (2) those in which he was not authorized to sign the instruments. Cases in each category must be excluded in considering the question.[1] In the first class of cases, the agent is obviously not the "person making" the instrument so payable. Such are those cited in 10 C.J.S. Bills and Notes § 129, p. 580, n. 76, 77. In Liberty Mut. Ins. Co. v. First Nat. Bank in Dallas, 151 Tex. 12, 245 S.W.2d 237, the fraudulent agent did not sign the checks. The employee who did sign was innocent. The Supreme Court clearly held the fraudulent non-signing agent was not "the person" making the check "so payable" and rejected the theory that the subservient signer who followed his orders was a mere automaton. In the second class of cases, absence of authority is uniformly held to preclude imputing knowledge or intent to the principal—the nominal maker or drawer. The most discriminating recent analysis of these two lines of cases is that contained in 74 A.L.R. 822, and 118 A.L.R. 38–44.

The one exception cited, and the only one our research has produced, is Portland Postal Employees Credit Union v. U. S. Nat. Bank of Portland, 1943, 171 Or. 40, 135 P. 2d 467, 136 P.2d 259. It is in point, and supports appellants' position.

Opposing this holding, where the knowledge is that of only one signer and other required signers are ignorant, are the cases of Goodyear Tire & Rubber Co. of Cal. v. Wells Fargo Bank, 1934, 1 Cal.App.2d 694,

---

1. Decisions from states which have adopted the A. B. A. and American Law Institute Amendment are necessarily excluded (see 2 Paton, Dig.1867 and Supplement), as well as those cases in which the drawer's signature is forged or unauthorized. As to the latter situation, see Sec. 23 of the Uniform Act.

37 P.2d 483; Globe Indemnity Co. v. First Nat. Bank, Mo.App.1939, 133 S.W.2d 1066.; Pannonia Bldg. & Loan Ass'n v. West Side Trust Co., 1919, 93 N.J.Law 377, 108 A. 240; P. & G. Card & Paper Co. v. Fifth Nat. Bank, Sup.1918, 172 N.Y.S. 688; National Surety Corp. v. Federal Reserve Bank, 1936, 161 Misc. 304, 292 N.Y.S. 607, affirmed 250 App.Div. 754, 296 N.Y.S. 240; Noel v. Security Bank of Chicago, 1911, 163 Ill.App. 82; Bourne v. Maryland Cas. Co., 1937, 185 S.C. 1, 192 S.E. 605, 118 A.L.R. 1; Pennsylvania Co. for Ins., etc. v. Federal Reserve Bank, D.C.Pa.1939, 30 F.Supp. 982. They support the rule that the knowledge of the fraudulent signer governs. This rule has been questioned by one authoritative text writer.[2] It has been acclaimed for varying reasons in law review comments.[3]

▇ If the payroll clerk had been the sole signer of the checks, the problem would be relatively simple. It is now almost uniformly held that the knowledge and intent of the signer controls, where he is authorized to sign checks. Fifth and Sixth Decennial Digests, Bills and Notes, ▇ Britton, Bills and Notes, Sec. 149, p. 699; Beutel's Brannan's N.I.L. (1948) 328; 74 A.L.R. 823; 118 A.L.R. 39; 146 A.L.R. 844; 17 La.L.Rev.(1957) 462; and see Liberty Mut. Ins. Co. v. First Nat. Bank in Dallas, supra [151 Tex. 12, 245 S.W.2d 239], where it was found unnecessary to decide the question, but where it was said "perhaps the weight of authority supports" this view. The clear weight of authority likewise establishes the rule that where there are multiple signers, the perfidy of the fraudulent signer governs intent. As said in the Federal Reserve Bank case, above, the Oregon decision to the contrary "seems to stand alone."

We think the majority rule has overwhelming support in reason: (1) As between two innocent parties, the loss should fall on the principal, who has placed a fraudulent agent in a position to cause loss. (2) The nominal maker, and his innocent co-signing agent are invariably ignorant that the payee is fictitious. Any other construction would make Sec. 9, subd. 3 meaningless and futile. (3) The faithless payroll clerk, in this instance at least, is the initiating agency who activated, engineered, directed and conducted the physical creation of the checks from their inception. From him they emanated. The comptroller would never have made the checks alone, and although his signature was required to give the checks validity, the clerk, indeed, was the person "making" the checks payable to a fictitious payee. (4) A rule which would make the order in time of signatures controlling, would be artificial and arbitrary, making loss fall by chance or the whim of the principal. (5) The Oregon rule would enable the principal to shift his loss by simple expedients, such as having one signer sign checks in blank, this depriving the innocent co-signer of power to entertain knowledge or intent. (6) The employer would invariably be expected to deny knowledge, and in fact, would ordinarily have no specific subjective intent with reference to checks. The only definite intent is that of the fraudulent employee. (7) The knowledge of the guilty clerk is the knowledge of the principal, regardless of the fact that such knowledge is diluted by ignorance of a co-signer. (8) In this instance, the dual signatures were required by the principal for its own protection. That safeguard failed, and one who had no part in the requirement should not suffer because of the failure. (9) Any other rule would impose

---

2. Britton, Bills and Notes (1943) Sec. 150, p. 713, where the "dominant actor" test is criticized for uncertainty.

3. 17 La.L.Rev. (1957) 457, 462; 30 N.D. L.Rev. 149; 30 N.D.L.Rev. 247; 2 St. L.U.L.J. 193; and see 22 U.Cinc.L.Rev. 219; 3 Vanderbilt L.Rev. 109; 8 Wash. & Lee L.Rev. 48; 4 Baylor L.Rev. 356, 360; 12 S.W.L.J. 250 (1958); 49 Mich. L.Rev. 1216; 32 Tulane L.Rev. 133; 72 S.A.L.J., 238, 424.

an insuperable burden on the drawee. The nominal maker's faithless agent has at least some knowledge in fact. The drawee has none. (10) A significant and dominant purpose of the statute was to make negotiable, and facilitate the handling with impunity, of bills which would otherwise be difficult or impossible of negotiation. That construction should be given which effectuates this purpose.

By logic and force of precedent the majority rule, in our opinion, is sound. We hold the checks were bearer instruments. The judgment is affirmed.