OAK PARK CURRENCY EXCHANGE, INC., Plaintiff-Appellant, *v.*
J. MAROPOULOS, Defendant-Appellee.

First District (1st Division)   No. 62770

Opinion filed April 25, 1977.

Roger C. Goble, of Dent, Hampton & McNeela, of Chicago, for appellant.

Juergensmeyer, Zimmerman & Smith, of Elgin (Charles M. Zimmerman, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Oak Park Currency Exchange, Inc. (plaintiff) brought action against James Maropoulos (defendant). Plaintiff's theory was that a check for $3564 had been endorsed by defendant and cashed by plaintiff and that the prior endorsement of the payee was a forgery. After all of the

evidence was presented, the trial court directed a jury verdict for defendant. Plaintiff appeals.

Defendant testified that on several occasions, his friend John Bugay had asked for assistance in cashing checks. On these occasions, defendant had accompanied Bugay to a bank where defendant transacted his business and had endorsed the check as a favor. On July 24, 1971, Bugay again requested assistance in cashing a check. Defendant suggested that they go to plaintiff currency exchange where defendant often transacted business and was known to plaintiff's employees. The check in question was a certified check drawn on American National Bank payable to the order of "Henry Sherman, Inc." and endorsed "Henry Sherman" on the reverse side.

Defendant testified that at the currency exchange he identified himself and asked the clerk if she would cash his friend's check. Though she was not the woman with whom he usually dealt, she recognized him. She answered that she would cash the check if defendant would endorse it. He endorsed the check and handed it to the clerk. He observed that she examined both sides of the check. She then handed him the money. He did not count this but gave it immediately to Bugay. Defendant testified unequivocally that he received no money from Bugay in return for his help.

Jacqueline Panveno, plaintiff's clerk, testified to essentially the same facts. She stated that she was under the impression that defendant's friend was Henry Sherman, though no one had told her that. She was told by defendant that the check was a commission check and his friend needed the money. She testified that defendant had offered to endorse the check. She watched him endorse it, handed him the money, and saw him give the money to Bugay. She further testified that after the two men turned away from her, she saw Bugay hand defendant some money. When questioned as to the amount, she stated that it was none of her business and, "I wasn't paying that close attention to it." On cross-examination she testified that defendant initially asked her to cash the check as a favor for his friend. When asked why she continued to watch the two men rather than return to her duties, she answered "I didn't continue to watch them." She went on to say that she had looked up to see why the men had stopped walking.

Some time later a claim was made against plaintiff by Belmont National Bank where plaintiff had deposited the check because the endorsement "Henry Sherman" had been forged. Plaintiff determined that it was liable to the bank and paid the claim. Subsequently plaintiff filed this action.

In its judgment order directing the verdict, the trial court found that defendant was an accommodation endorser and as such made no warranty to defendant under the Uniform Commercial Code (Ill. Rev.

Stat. 1975, ch. 26, par. 3—417(1)) and that payment of the check discharged all endorsers so that defendant was not liable to plaintiff on his endorsement.

In this court, plaintiff urges that defendant breached his warranty of good title when he obtained payment of a check on which the payee's endorsement was forged and that there was sufficient evidence to support a directed verdict in favor of plaintiff. Plaintiff's contentions are based exclusively on section 3—417(1) of the Code. Defendant contends that an accommodation endorser does not make warranties under section 3—417(1) (Ill. Rev. Stat. 1975, ch. 26, par. 3—417(1)) and that the trial court properly directed a verdict for defendant.

A party who signs an instrument "for the purpose of lending his name to another party to * * *" that instrument is an accommodation party. (Ill. Rev. Stat. 1975, ch. 26, par. 3—415(1). See *Marcus v. Wilson* (1973), 16 Ill. App. 3d 724, 730, 306 N.E.2d 554.) Such a party "is liable in the capacity in which he has signed * * * ." (Ill. Rev. Stat. 1975, ch. 26, par. 3—415(2).) Therefore defendant is an accommodation endorser and would be liable to plaintiff under his endorser's contract, provided that he had received timely notice that the check had been presented to the drawee bank and dishonored. (Ill. Rev. Stat. 1975, ch. 26, par. 3—414.) Because these conditions precedent to the contractual liability of an endorser have not been met, defendant is not liable on his contract as an accommodation endorser.

Furthermore, the drawee bank, American National, did not dishonor the check but paid it. This operated to discharge the liability of defendant as an accommodation endorser. See *Marcus*, 16 Ill. App. 3d 724, 730.

The portion of the Code upon which plaintiff seeks to hold defendant liable is section 3—417 entitled "Warranties on Presentment and Transfer." (Ill. Rev. Stat. 1975, ch. 26, par. 3—417.) As shown above, the parties both confine their arguments to subsection 3—417(1) of the Code and the judgment order refers specifically thereto. Section 3—417(1) sets out warranties which run only to a party who "pays or accepts" an instrument upon presentment. (See Ill. Ann. Stat. ch. 26, par. 3—417(1), Uniform Commercial Code Comment 1, at 317 (Smith-Hurd 1963).) We note that presentment is defined as "a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor * * * ." (Ill. Rev. Stat. 1975, ch. 26, par. 3—504(1).) As applied to the instant case, the warranties contained in section 3—417(1) are limited to run only to the payor bank and not to any other transferee who acquired the check. In the case before us, plaintiff is not a payor or acceptor of the draft. This interpretation is strongly supported by the official comment which details the reasons for distinguishing warranties made to a payor or acceptor of an instrument from those made to a transferee. (See also Ill. Ann. Stat. ch.

26, par. 4—207, Uniform Commercial Code Comment 4, at 480-81 (Smith-Hurd 1963).) The case before us involves a transferee, not a party who paid or accepted the instrument. Thus it appears that reliance by plaintiff upon subsection 3—417(1) was misplaced. The authorities cited by plaintiff do not support its contention as all of these cases were decided before the effective date of the Code.

Defendant has cited no case bearing directly upon the situation before us. Our research has not disclosed any case construing this aspect of the pertinent subsection of the Code. Aside from the enactment itself and the comments above cited, we found only dicta to the effect that by this subsection the warranties pertaining to authenticity of endorsements run only "to a person who in good faith pays or accepts * * * " the instrument. See *Mortimer Agency, Inc. v. Underwriters Trust Co.* (1973), 73 Misc. 2d 970, 341 N.Y.S. 2d 75, 79.

An additional theory requires affirmance of the judgment appealed from. Subsection 3—417(2) of the Code provides that one "who transfers an instrument and receives consideration warrants to his transferee * * * " that he has good title. (Ill. Rev. Stat. 1975, ch. 26, par. 3—417(2).) The Illinois comments to this portion of the Code confirm that this warranty is made only by any party who transfers an instrument for consideration. (See Ill. Ann. Stat., ch. 26, par. 3—417, Illinois Code Comment, at 34 (Smith-Hurd Supp. 1977).) In *First Bank & Trust Co. v. County National Bank* (Fla. App. 1973), 281 So. 2d 515, 517, by way of dicta, the court noted the presence of the phrase "and receives consideration" in this subsection of the Code.

The evidence presented in the case at bar establishes that defendant received no consideration for his endorsement. Though Mrs. Panveno testified that she saw Bugay hand defendant some money as the two left the currency exchange, she also testified that defendant stated that he was doing a favor for his friend; that she was not paying close attention to the two men and that she did not watch them as they walked away from her. Thus her testimony was considerably weakened by her own qualifying statements and it was strongly and directly contradicted by the positive and unshaken testimony of defendant that he received nothing in return for his assistance. The simple fact standing alone that this witness saw Bugay hand some money to defendant, even if proved, would have no legal significance without additional proof of some type showing that the payment was consideration for defendant's endorsement.

■■ Under settled legal theory, a verdict may be directed only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent "so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504;

*Tanenbaum v. Loveless* (1973), 16 Ill. App. 3d 104, 108, 305 N.E.2d 612.) Moreover, a trial judge need not accept evidence presented by the nonmoving party if that evidence is so weak that it loses its significance when viewed in light of all the evidence in the case. (*Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 712, 313 N.E.2d 631, and cases there cited.) In our opinion, the trial court correctly determined that no contrary verdict based on the testimony offered by plaintiff could ever stand and properly directed a verdict for defendant.

Judgment affirmed.

McGLOON and BUA, JJ., concur.