(June 14, 1988)

■ PRUDENTIAL-BACHE SECURITIES, INC., Appellant-Respondent, v CITIBANK, N. A., Respondent-Appellant.—Order and judgment (one paper), Supreme Court, New York County (William McCooe, J.), entered on April 23, 1987, affirmed for the reasons stated by McCooe, J., without costs and without disbursements. Concur—Murphy, P. J., Sullivan and Ellerin, JJ.

Asch and Kassal, JJ., dissent, in part, in a memorandum by Asch, J., as follows: By dismissing the complaint, the majority

has accepted the narrow technical argument asserted by the defendant under the Uniform Commercial Code. It overlooks the realities of the situation presented to us. The majority, as a consequence, has rejected any consideration of the plaintiff's very substantial monetary loss and it condones what appears to be serious banking malfeasance on the part of defendant Citibank, N. A. Moreover, it has ignored what this court decided in the related case of *Prudential-Bache Sec. v Bank Leumi Trust Co.* (Sup Ct, NY County, Wallach, J., index No. 29396/84, *affd* 125 AD2d 1016), as well as its analysis.

Plaintiff Prudential brought this action to recover the sum of $3,719,859.58 from defendant Citibank based upon causes of action sounding in commercial bad faith, conversion and moneys had and received. Defendant Citibank denied the allegations of the complaint, asserted six affirmative defenses and set forth three separate counterclaims. The Supreme Court granted plaintiff's motion to dismiss defendant's counterclaims and claim for punitive damages and also granted defendant's cross motion dismissing the plaintiff's complaint. I would modify the order appealed from to the extent of denying defendant's cross motion and allowing the complaint of Prudential-Bache Securities, Inc. to stand.

Former Prudential-Bache employee John Efler, together with other conspirators, conceived a plan to embezzle over $18,000,000 from plaintiff. Efler was responsible for dividend and interest payments to record owners of securities. He caused the unauthorized issuance of checks, made payable to corporations whose names were similar to those of actual customers, totaling (in this case) about $3.7 million. His coconspirator, Lawrence Artese, opened two corporate accounts under the names "M.N. Corporation" and "Harvard Corporation" at Citibank, into which Artese deposited the checks.

From May 1983 to October 1983, upon the collection of the proceeds from these checks, withdrawals were made by Artese, many in excess of $10,000 cash, without filing currency transaction reports (CTR's), as required by Federal statute. These withdrawals were made with the active connivance of at least two of Citibank's employees, Juanita Reyes and Robert Hutchinson, a customer service representative and assistant branch manager, respectively. In addition, there was testimony before the Federal Grand Jury that the branch manager and others at Citibank might have been aware of these accounts although there was no indication that they too had been bribed. Apparently, the officers and employees at the bank winked at checks which were slightly below $10,000,

known in the banking industry as "niners", to avoid the Federal notification requirements.

Prudential asserts that, with knowledge that M.N. and Harvard were not entitled to the plaintiff's checks or the proceeds, the defendant consented to and wrongfully paid out the proceeds deposited to these accounts and thus converted plaintiff's checks and the proceeds. In addition, plaintiff asserts defendant wrongfully had and received moneys in the total sum sought and, therefore, is indebted to plaintiff in that sum.

Finally, plaintiff asserts that in furtherance of the conspiracy to defraud plaintiff, M.N., Harvard and Citibank, through their officers, agents and employees, established and maintained the corporate checking accounts as described herein at Citibank for the specific and express purpose of defrauding plaintiff and concealing the conversion of its funds. Thus, plaintiff alleges that the checking accounts of M.N. and Harvard were established and maintained at Citibank without the proper opening account records and corporate resolutions and, therefore, the bank knew or should have reasonably known that these accounts were established and maintained as part of a conspiracy and scheme to defraud plaintiff.

In addition, plaintiff asserts that defendant Citibank, through its officers and employees, participated in the scheme to defraud plaintiff and to launder the proceeds wrongfully converted by the defendant. It asserts that defendant approved the encashment of many checks drawn on the accounts of M.N. and Harvard in amounts of $10,000 or less, with knowledge that checks presented to defendant for encashment in excess of $10,000 would have required the filing of currency transaction reports. Thus, Harvard presented to defendant for encashment at least 17 checks in this category drawn upon Harvard's account at this bank in an aggregate amount exceeding $128,000. During this same period, M.N. presented to defendant for encashment checks in an aggregate amount exceeding $108,000. Each of these checks was in the amount of $10,000 or just below $10,000 and was approved for encashment by defendant through its officers. Also, during this period Harvard presented for encashment at least 15 checks in an amount exceeding $395,000 and M.N. presented at least 25 checks in an aggregate amount exceeding $675,000. Each of these checks was in an amount exceeding $10,000 and was approved for encashment by defendant, through its officers, with knowledge that such transactions required the filing of currency transaction reports. However, plaintiff alleges that

defendant failed to file the currency transaction reports for each of the cash transactions in excess of $10,000, thereby acting in furtherance of the scheme to defraud plaintiff and to continue the concealment of the disposition of proceeds belonging to plaintiff.

Finally, plaintiff asserts that defendant participated in the scheme to defraud plaintiff by approving and causing to be approved the purchase of bank and/or cashier's checks with proceeds of the checks wrongfully misappropriated from plaintiff and deposited into these accounts. Thus, M.N. and Harvard purchased at least 23 bank checks with those funds belonging to plaintiff in an aggregate amount exceeding $990,000, and plaintiff alleges defendant approved the purchase of each of the foregoing checks without the filing of the required currency transaction reports and with knowledge that proceeds belonging to plaintiff were being utilized to purchase these checks without the knowledge, consent or acquiescence of plaintiff. Plaintiff asserts that these acts were wrongful, contrary to proper banking procedures, and constituted "commercial bad faith".

The court at nisi prius dismissed the complaint by virtue of UCC 3-405. This section reads in pertinent part:

"Impostors; Signature in Name of Payee

"(1) An indorsement by any person in the name of a named payee is effective if * * *

"(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest."

The court held that this section applies since Efler, plaintiff's employee, furnished the names of M.N. and Harvard, the payee corporations, in requisitioning checks, and that they were never intended to have an interest in the embezzled funds. Thus, the court found that even if defendant Citibank were negligent subsequent to May of 1983, UCC 3-405 would still be available as a defense, citing *Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank* (57 NY2d 439).

In that case, the Court of Appeals noted that the general rule is that a drawee bank may not debit its customer's account when it pays a check over a forged indorsement, since the underlying relationship between a bank and its depositor is the contractual one of a debtor and creditor. Thus, when a drawer issues a check in the name of a particular payee, the drawee bank is to apply funds from the drawer's account to its payment only upon receiving the payee's "authorized" in-

dorsement *(supra,* at 444). However, when the conditions set forth in section 3-405 are present, then the bank is justified in debiting the drawer's account. This is for the stated reason that the employer is normally in a better position to prevent such forgeries, by reasonable care in the selection and supervision of its employees, or in a better position to cover the loss by fidelity insurance, rather than the drawee.

The Court of Appeals notes that "some commentators have bluntly acknowledged [the code provision] was 'a banker's provision intended to narrow the liability of banks and broaden the responsibility of their customers' " *(Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, supra,* at 445). Thus, the court found that mere failure to use ordinary care by the bank in the handling of the check would not subject the drawee bank to liability *(supra,* at 447).

However, the court went on to say: "This is not to say that, if a check is 'tainted in *some other way* which would put the drawee on notice, and which would make its payment unauthorized' *(Underpinning & Foundation Constructors v Chase Manhattan Bank, N.A.,* 46 NY2d 459, 466, *supra;* emphasis supplied), a drawee bank may yet not be liable. For instance, a drawee bank surely is not immunized by section 3-405 when it acts dishonestly. In short, 'a basis for liability *independent* of any liability which might be created by payment over a forged instrument alone' may very well survive *(Underpinning & Foundation Constructors v Chase Manhattan Bank, N.A., supra,* at p 469; emphasis supplied)." *(Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, supra,* at 447.)

Plaintiff's theory of recovery is independent of and not based on the general rule that a drawee bank would be liable for a forged indorsement. As plaintiff noted below, it did not allege a forged indorsement claim but, rather, based its claim on allegations that defendant knew of, and indeed actively participated in, a scheme to launder the moneys belonging to Prudential-Bache. Thus, plaintiff's causes of action fall outside the intended scope of the Uniform Commercial Code.

The nisi prius court in effect made findings of fact that defendant bank followed reasonable commercial standards as a matter of law *(see,* UCC 3-419 [3]). However, this is the very gravamen or crux of plaintiff's complaint, i.e., that the bank engaged in unreasonable conduct in allowing wholesale laundering of plaintiff's money.

"The literal mandate of the Code in normal commercial transactions, even those negligently executed, is for the loss

due to an indorsement forged by a faithless employee to fall upon the party who most frequently dealt with the forger and was best able to prevent the forgery—the employee's employer * * *

"The literal application of these rules in this case, however, would produce anomalous and unjust results, for the collecting bank would escape from liability despite horrendous commercial dereliction * * *

"In my opinion, the analytical momentum of the majority's rationale, with which I agree, ineluctably leads to the conclusion that an extra-Code cause of action for commercially reckless conduct must lie against the collecting bank." *(Brighton, Inc. v Colonial First Natl. Bank,* 86 NJ 259, 262-263, 430 A2d 902, 904 [Handler, J., concurring in part and dissenting in part], *affg substantially for the reasons expressed in opn of App Div at* 176 NJ Super 101, 422 A2d 433.)

The facts as set forth herein are directly in point with those in the related matter, *Prudential-Bache Sec. v Bank Leumi Trust Co. (supra).* The same type of scheme was employed in that case by Efler and others. The Supreme Court denied Bank Leumi's motion to dismiss the complaint notwithstanding its invocation of section 3-405 and other sections of the Uniform Commercial Code. We affirmed that denial, without opinion. What Justice Wallach, then at nisi prius, wrote concerning the complaint against Bank Leumi applies with as much force against Citibank herein: "What is overlooked is that this complaint presents not a single lapse of 'wary vigilance' which would be wholly insufficient *(Hall v Bank of Blasdell,* 306 NY 336, 341; *Spielman v Manufacturers Hanover Trust Co.,* 60 NY2d 221), or even 'suspicious circumstances which might well have induced a prudent banker to investigate' *(Chemical Bank v Haskell,* 51 NY2d 85, 93), but rather a lengthy and relentless course of laundering deposits from a single source into brinkmanship cash withdrawals which may be viewed as falling outside any recognized commercial norm".