STEINROE INCOME TRUST, on Behalf of its Series of Shares Designated Steinroe Cash Reserves, the successor in interest to Steinroe Cash Reserves, Inc., Plaintiff-Appellee, v. CONTINENTAL BANK N.A., f/k/a Continental Illinois National Bank and Trust Company of Chicago, a subsidiary of Continental Illinois Corporation, Defendant-Appellant.

First District (5th Division)   No. 1—90—3375

Opinion filed November 20, 1992.

Franklin P. Auwarter and James C. Schroeder, both of Mayer, Brown & Platt, of Chicago, for appellant.

Paul T. Lively, of Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

After an unidentified culprit absconded with the proceeds of a check, plaintiff, as drawer of the check, sued defendant, the collecting bank, seeking to enforce the presentment warranties under sections 3—417(1)(a) and 4—207(1)(a) of the Illinois Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, pars. 3—417(1)(a), 4—207(1)(a)). The trial court entered summary judgment in favor of plaintiff and defendant appealed. We consider whether plaintiff, as drawer of the check, had standing to enforce the presentment warranties under sections 3—417(1)(a) and 4—207(1)(a).

We reverse.

After the death of her husband, Mary B. Dybas filed a claim on her husband's life insurance policy. In early 1987, the insurance company sent Dybas a check for approximately $100,000. This check was stolen by an unidentified culprit before it reached Dybas.

In February 1987 the culprit used the insurance check to open an account with the plaintiff investment company, Steinroe Income Trust (Steinroe). The culprit assumed the identity of Howard Brest, who had died in Quincy, Illinois. Although the only payee on the insurance check was Dybas, the Steinroe account was opened as a joint account in the names of Dybas and Brest. Of course, the indorsements on the back of the check in the names of Dybas and Brest were phony as were the signatures that appeared on the application forms for the Steinroe account.

Three days later, the culprit called Steinroe and received confirmation that the insurance check had cleared. The next day, the culprit went to Steinroe's office and presented a letter, purportedly signed in the names of Dybas and Brest, requesting that nearly all of the proceeds in the account be redeemed. The culprit asked that Steinroe have a redemption check ready for him to pick up in another three days. Steinroe prepared the redemption check in the amount of $87,500 and made it payable to Dybas and Brest. The redemption check was drawn on the State Street Bank where Steinroe maintained its bank accounts.

The culprit picked up the redemption check and, having previously opened an account with defendant (Continental Bank) in the name of Howard Brest, promptly deposited the redemption check into this account. Again, the indorsements of Brest and Dybas on the back of the redemption check were phony. Continental Bank stamped the check "P.E.G." (prior endorsements guaranteed) and presented the check to State Street Bank. State Street Bank paid the check and charged Steinroe's account.

The culprit then absconded with the proceeds in the account with Continental Bank.

Meanwhile, Dybas contacted the insurance company explaining that she never received the insurance check. The insurance company issued her another check and then filed suit against Steinroe to recover for the loss on the insurance check. Steinroe agreed to settle the claim and paid the insurance company approximately $100,000. Steinroe, in turn, asked the State Street Bank to recredit its account for the amount that was paid on the redemption check. State Street Bank refused to do so. Steinroe then filed the instant suit against Continental Bank to recover for the loss on the redemption check. Steinroe sought to enforce the presentment warranties pursuant to sections 3—417(1)(a) and 4—207(1)(a) of the Illinois Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, pars. 3—417(1)(a), 4—207(1)(a)).

In the trial court, the parties stipulated to the facts and each side moved for summary judgment. Continental Bank argued in its motion, *inter alia*, that Steinroe did not have standing to enforce the presentment warranties under sections 3—417(1)(a) and 4—207(1)(a). The trial court disagreed and entered the summary judgment in favor of plaintiff on other grounds. Defendant filed this appeal.

OPINION

■■ ■ Steinroe filed suit to enforce the presentment warranties under sections 3—417(1)(a) and 4—207(1)(a) of the Illinois Uniform Commercial Code, which provided:

"3—417. Warranties on Presentment and Transfer. (1) Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that

(a) he had good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title." (Ill. Rev. Stat. 1989, ch. 26, par. 3—417(1)(a).)

"4—207. Warranties of Customer and Collecting Bank on Transfer or Presentment of Items; Time for Claims. (1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title." (Ill. Rev. Stat. 1989, ch. 26, par. 4—207(1)(a).)

According to the express language of the sections, a party had standing to enforce the presentment warranties only if it could be deemed the "payor bank" or "other payor" who pays or accepts. We now consider whether Steinroe, as the drawer of the redemption check, had standing to enforce the presentment warranties.

It is clear that Steinroe did not have standing as a "payor bank." The State Street Bank, not Steinroe, was the "payor bank" on the redemption check.

However, at the time of the proceedings below, it was somewhat unclear whether Steinroe, as the drawer of the redemption check, could be deemed an "other payor" and thereby satisfy the standing requirements. In fact, the parties set forth case law from across the country which presented a majority and minority view on this question. The majority view provided that the language "other

payor" required a narrow construction which excluded the drawer of a check. Continental Bank argued that the court should apply this majority view and cited in support thereof *Oak Park Currency Exchange, Inc. v. Maropoulos* (1977), 48 Ill. App. 3d 437, 363 N.E.2d 54. The minority view provided that the language "other payor" required a broad construction which included the drawer of a check. Steinroe argued that the court should apply this minority view and cited the leading case in support thereof, *Sun 'N Sand, Inc. v. United California Bank* (1978), 21 Cal. 3d 671, 582 P. 2d 920, 148 Cal. Rptr. 329.

■ We note that, after the parties filed their briefs, sections 3—417 and 4—207 were amended (Pub. Act 87—582, §1, eff. Jan. 1, 1992). The comments to the amended section 3—417 addressed the question concerning application of the majority and minority view:

"In *Sun 'N Sand, Inc. v. United California Bank*, 582 P. 2d 920 (Cal. 1978), the court held that under former section 3—417(1) a warranty was made to the drawer of a check when the check was presented to the drawee for payment. The result in that case is rejected." (Ill. Ann. Stat., ch. 26, par. 3—417, Uniform Commercial Code Comment, at 121 (Smith-Hurd Supp. 1992).)

Therefore, we also reject Steinroe's argument for application of the minority view as represented by *Sun 'N Sand*. We hold that Steinroe, as the drawer of the redemption check, did not have standing to enforce the presentment warranties under either the former or amended sections 3—417 and 4—207. The judgment in favor of Steinroe is reversed and judgment is entered in favor of Continental Bank.

Reversed.

MURRAY and HARTMAN, JJ., concur.