**TEXAS STADIUM CORPORATION, Appellant,**

v.

**SAVINGS OF AMERICA, Appellee.**

No. 05–95–00229–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 1996.

Harvey G. Joseph, Donald E. Godwin, David J. White, Godwin & Carlton, P.C., Dallas, for appellant.

Jim Moore, Moore & Gunter, Dallas, Bernard Lilse Mathews, III, Hocker, Morrow, Boyd & Matthews, Spring, for appellee.

Before KINKEADE, WHITTINGTON and HANKINSON, JJ.

## OPINION

WHITTINGTON, Justice.

Texas Stadium Corporation ("TSC") appeals a summary judgment granted in favor of Savings of America ("SOA") in a suit arising from a fraudulent check scheme. In ten points of error, TSC contends the trial judge erred in granting summary judgment because: (1) SOA did not address each of the 206 checks as a separate transaction; (2) a fact issue exists on the applicability of the final payment rule; (3) SOA failed to establish conclusively its right to judgment on TSC's causes of action for negligence, conversion, breach of warranty, and money had and received; (4) Texas law allows TSC to pursue a direct action against SOA for breach of warranty; (5) fact issues exist on SOA's intended payee defense; and (6) SOA did not establish a statute of limitations defense with respect to each of the checks. We affirm the trial court's judgment.

## BACKGROUND

TSC is the lessee of Texas Stadium in Irving, Texas. Candace Pratt worked as an accounts payable clerk for TSC from late 1988 until August 1993. As part of her job, Pratt prepared TSC checks, which were later signed by authorized officers of TSC.

While employed at TSC, Pratt embezzled money from TSC. As part of her embezzlement scheme, Pratt established a d/b/a account at SOA in the name of Candace A. Pratt d/b/a AAA Lawn Maintenance Service and Repair ("AAA"). To effect her embez-

zlement scheme, Pratt would prepare a check for an actual vendor, and after having the check signed by an authorized officer of TSC, Pratt would alter the check by either changing the payee name to a version of the AAA name or by adding the AAA name above the original payee name. Pratt also used other methods to embezzle money from TSC. One such method was to prepare a TSC check in a version of the AAA name and then deposit it into her account once it was signed. Once Pratt obtained the appropriate signatures and deposited the checks in her d/b/a account, SOA then forwarded the checks to TSC's bank, and the checks were paid in due course. In all, Pratt deposited 206 checks in her account, totalling $1,060,052.10.

After discovering Pratt's scheme, TSC filed suit against Pratt and SOA to recover the money Pratt embezzled. TSC alleged causes of action against Pratt and SOA for negligence, conversion, money had and received, and breach of warranty. In July 1994, SOA moved for summary judgment on all of TSC's claims. In its motion, SOA asserted it was entitled to judgment as a matter of law because: (1) Texas law is well settled that losses resulting from a faithless employee are the burden of the employer; (2) TSC did not have standing to assert warranty claims against SOA; (3) the final payment rule precluded TSC's common law causes of action; and (4) the statute of limitations barred TSC's claims. After hearing the evidence and arguments of counsel, the trial judge granted summary judgment in favor of SOA without specifying the basis for his ruling. TSC and Pratt then entered into an agreed judgment. TSC appeals the summary judgment granted in favor of SOA.

## STANDARD OF REVIEW

■ The standard of review in a summary judgment case is well established. *See* Tex.R. Civ. P. 166a(c); *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993). When the trial court does not specify the grounds upon which it grants summary judgment, we affirm the trial court's judgment if any of the

movant's grounds support the summary judgment. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). If a movant does not show its entitlement to judgment as a matter of law, we must remand the case for trial on the merits. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

## 206 CHECKS

■ In its second point of error, TSC contends the trial judge erred in granting summary judgment because SOA failed to address all 206 checks separately in its summary judgment motion.[1] TSC argues that each check constituted a separate transaction that should have been addressed separately with respect to each cause of action. We disagree. TSC's sole authority for its argument under this point is *Zambia National Commercial Bank Ltd. v. Fidelity International Bank,* 855 F.Supp. 1377 (S.D.N.Y. 1994). We conclude TSC's reliance on *Zambia* is misplaced. In *Zambia,* Zambia Bank sought to recover damages from Fidelity Bank based on two forged checks. In a trial to the court, Fidelity Bank argued that Zambia Bank could not recover because its negligence enabled the forger to obtain payment by way of an unauthorized signature. Although the two checks were examined separately for purposes of determining Zambia Bank's negligence, this fact alone does not support TSC's argument that SOA had to address each check separately in its summary judgment motion. *Zambia* is not controlling.

In this case, TSC did not sue on each check individually. Rather, TSC sued on legal theories that applied to all 206 checks. SOA's motion addressed all of TSC's legal theories. We overrule TSC's second point of error.

## FINAL PAYMENT RULE

In its third point of error, TSC contends the trial judge erred in granting summary judgment because fact issues exist on the

---

1. Although TSC states generally in its first point of error that the trial judge erred in granting summary judgment in favor of SOA, TSC does not present any specific arguments under this point. Since all of TSC's arguments are included in TSC's other points of error, we address TSC's first point of error in the context of our discussion of each subsequent point.

applicability of the final payment rule. TSC specifically contends that fact issues exist on whether SOA (1) was a holder in due course and (2) acted in good faith in accepting the checks. On the record before us, we cannot agree.

■ Under the final payment rule, payment or acceptance of any instrument is final if made in favor of (1) a holder in due course *or* (2) a person who has in good faith changed his position in reliance on the payment. Act of May 24, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2429, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex. Gen. Laws 4582, 4602 (current version at Tex. Bus. & Com.Code Ann. § 3.418(c) (Tex.UCC) (Vernon Supp.1996)). The final payment rule only becomes operative once an item is finally paid. Final payment occurs when a payor bank pays the item or settles for the item and the time frame for revoking that settlement has expired. Act of May 25, 1985, 69th Leg., R.S., ch. 621, § 1, 1985 Tex. Gen. Laws 2307, 2308, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 4, 1995 Tex. Gen. Laws 4582, 4636 (current version at Tex. Bus. & Com. Code Ann. § 4.215(a)(1)-(3) (Tex.UCC) (Vernon Supp.1996)). If the final payment rule applies, common law causes of action for negligence, conversion, and money had and received are barred. *Fidelity & Casualty Co. v. First City Bank of Dallas*, 675 S.W.2d 316, 319 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *Aetna Life & Casualty Co. v. Hampton State Bank*, 497 S.W.2d 80, 85-6 (Tex. Civ.App.—Dallas 1973, writ ref'd n.r.e.).

### Good Faith Change of Position

TSC contends summary judgment was improper because SOA did not act in good faith in depositing and crediting the checks. According to TSC, SOA had actual knowledge that the indorsements were not proper, and SOA could therefore not have acted in good faith. We cannot agree with TSC's contentions.

■ " 'Good faith' means honesty in fact in the conduct or transaction concerned." Tex. Bus. & Com.Code Ann. § 1.201(19) (Tex.UCC) (Vernon 1994). Negligence is not the test of good faith. *Riley v. First State Bank,*

*Spearman,* 469 S.W.2d 812, 816 (Tex.Civ. App.—Amarillo 1971, writ ref'd n.r.e.). Lack of good faith requires actual knowledge of the wrongdoing, not merely notice of suspicious facts. *British Caledonian Airways, Ltd. v. First .State Bank of Bedford, Texas,* 819 F.2d 593, 596–97 (5th Cir.1987).

To support its position that SOA did not act in good faith, TSC relies on *La Sara Grain Co. v. First National Bank of Mercedes,* 673 S.W.2d 558 (Tex.1984). In that case, La Sara Grain had opened an account at the First National Bank of Mercedes. When it did, it filed a corporate resolution with the bank providing that any two of four authorized signatories could sign checks for the corporation. Jones was one of the authorized signatories on the account. The bank subsequently honored checks signed by only Jones. After La Sara Grain fired Jones, it discovered he had embezzled over $300,000. *Id.* at 561. The bank president testified at trial that the bank would know of anything it had in its files. *Id.* at 563. Based on this testimony, the Court concluded the bank did not act in good faith in accepting the checks with only one authorized signature. *Id.* at 563. In reaching this conclusion, the court relied on the fact that the bank knew that two signatures were required and that the checks bore only one signature. *Id.* According to the court, these two facts amounted to knowledge that the checks were unauthorized. We do not consider *La Sara Grain* controlling.

■ In contrast to *La Sara Grain,* the checks at issue in this case did have the required number of signatures. In addition, it is undisputed that the checks in question were signed by authorized representatives of TSC. Nevertheless, TSC relies on the deposition testimony of several SOA clerks to raise a fact issue on SOA's knowledge. The SOA clerks admitted that they were aware that some of the indorsements were not in compliance with SOA's internal indorsement policies. We do not believe this fact alone raises a fact issue on SOA's good faith.

Although SOA clerks accepted the checks knowing the indorsements were not in compliance with SOA guidelines, they neverthe-

less stated they had no knowledge of Pratt's embezzlement. While SOA's acceptance of the nonconforming checks may have been negligence, such negligence does not mean SOA acted in bad faith. *See Riley,* 469 S.W.2d at 816. Rather, SOA acted in good faith unless it had knowledge of Pratt's embezzlement. *See Aetna Life,* 497 S.W.2d at 88. Here, the summary judgment evidence showed SOA had no actual knowledge of Pratt's embezzlement. Thus, the trial judge properly concluded that SOA acted in good faith for purposes of the final payment rule as a matter of law. It is undisputed that SOA changed its position by crediting all of the checks deposited by Pratt and that the payor bank has paid all of the checks. Thus, the final payment rule bars TSC's recovery on its common law causes of action. Because this is an independent ground for application of the final payment rule, we do not address TSC's argument that the trial judge erred in concluding that SOA was a holder in due course. We overrule TSC's third point of error.

## COMMON LAW CAUSES OF ACTION

In points of error four, five, and six, TSC contends the trial judge erred in granting summary judgment because fact issues exist on TSC's causes of action for negligence, conversion, and money had and received. We disagree. As noted above, when the final payment rule applies, common law causes of action for negligence, conversion, and money had and received are barred. *Fidelity & Casualty Co.,* 675 S.W.2d at 319; *Aetna Life,* 497 S.W.2d at 85–86. We have previously held that section 3.418's final payment rule applies in this case. Accordingly, the trial judge did not err in concluding that TSC's causes of action for negligence, conversion, and money had and received were barred. *See Fidelity & Casualty Co.,* 675 S.W.2d at 319; *Aetna Life,* 497 S.W.2d at 85–6. We overrule TSC's fourth, fifth, and sixth points of error.

## UCC WARRANTIES

In its seventh point of error, TSC contends the trial judge erred in concluding that Texas law would not allow TSC to bring a direct action for breach of warranty against SOA as collecting bank. Under this point, TSC argues that a drawer is an "other payor" within the meaning of section 4.207 and, thus, that a drawer, like TSC, can sue a collecting bank directly for breach of warranty. SOA counters that the UCC was intentionally structured so that a drawer sues its drawee bank and the drawee bank, in turn, sues the collecting bank. Thus, it concludes TSC is prohibited from suing it directly for breach of warranty.

The issue of whether a drawer can maintain a direct action against a collecting bank for breach of UCC warranties appears to be a question of first impression in this State. For the reasons that follow, we conclude TSC cannot assert a direct action against SOA as collecting bank.

The UCC provides various warranties flowing from a collecting bank. Section 4.207 provides, in pertinent part:

(a) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or *other payor* who in good faith pays or accepts the item that

(1) he has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title;

· · ·

Act of May 24, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2449, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 4, 1995 Tex. Gen. Laws 4582, 4631 (current version at TEX. BUS. & COM.CODE ANN. § 4.207 & § 4.208 (Tex.UCC) (Vernon Supp.1996)) (emphasis added). The question is whether a drawer constitutes an "other payor."

TSC contends "other payor" includes the drawer because it is the drawer's account that is debited for the amount of the check. *See Insurance Co. of N. Am. v. Atlas Supply Co.,* 121 Ga.App. 1, 172 S.E.2d 632, 636 (1970). TSC also contends that allowing a drawer to sue a collecting bank avoids circuity of action that results if the drawer is only able to sue the drawee bank and only the drawee bank can sue the collecting bank.

There is a split of authority among the jurisdictions that have addressed the issue of whether a drawer is an "other payor" within the meaning of section 4.207.[2] The most noted authority for TSC's position is *Sun 'n Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978). *Sun 'n Sand* involved an employee who embezzled funds from Sun 'N Sand by altering checks. *Id.*, 148 Cal.Rptr. at 335, 582 P.2d at 926. The employee deposited the checks in her personal account at United California Bank ("UCB"). Sun 'N Sand had its account at Union Bank. Union Bank paid each of the checks presented by UCB. Sun 'N Sand then filed suit against UCB for breach of warranties. Although UCB argued that Sun 'N Sand could not bring a direct action against it, the court disagreed, holding that Sun 'N Sand could sue UCB directly. *Id.* at 337, 582 P.2d at 928. In reaching its decision, the court specifically relied on the fact that some of the enumerated warranties under section 4.207 expressly exclude drawers while section 4.207(a)(1) did not. *Id.*

Following the *Sun 'n Sand* decision, the drafters of the UCC amended section 3.417.[3] The comment to amended section 3.417 addressed *Sun 'n Sand*, "The result in that case is rejected." UNIF. COMMERCIAL CODE § 3–417, 2 U.L.A. 120 (1991). Thus, the drafters of the UCC apparently did not in-

tend to allow drawers to sue collecting banks directly.

One commentator has explained the reasons for not allowing direct actions against the collecting bank:

\*　　\*　　\*　　\*　　\*　　\*

The drawer should be required to proceed against the payor bank upon a claim based on section 4–401. There are several reasons for this requirement. First, the drawee will usually be in a better position than a collecting bank to know whether there is a defense available against the drawer under section 4–406 for failing to promptly examine his bank statement and report any unauthorized signatures or alterations. Second, if the drawer is first required to proceed against the drawee, some litigation may be avoided because the drawee may be better able to evaluate the merits of the drawer's contentions. Third, because of the business relationship between the drawer and drawee, they have reason to settle without recourse to legal action. For similar reasons, the collecting bank may want to settle with the drawee.

WILLIAM HAWKLAND ET AL., UNIFORM COMMERCIAL CODE SERIES, § 4–207:05, p. 441 (1994).

---

**2.** Six jurisdictions have allowed a drawer to sue a collecting bank directly. *See Hartford Fire Ins. Co. v. Maryland Nat'l Bank*, 341 Md. 408, 671 A.2d 22, 31 (App.1996); *Kobuszewski v. Scriber*, 518 So.2d 524, 533 (La.Ct.App.1987); *Insurance Co. of N. Am. v. Purdue Nat'l Bank of Lafayette*, 401 N.E.2d 708, 714 (Ind.Ct.App.1980); *Sun 'n Sand, Inc. v. United Cal. Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920, 928 (1978); *Prudential Ins. Co. of Am. v. Marine Nat'l Exchange Bank*, 315 F.Supp. 520, 522 (E.D.Wis. 1970); and *Insurance Co. of N. Am. v. Atlas Supply Co.*, 121 Ga.App. 1, 172 S.E.2d 632, 636 (1970). Nine jurisdictions have not. *See Cenlin Taiwan Ltd. v. Centon, Ltd.*, 5 F.3d 354, 357 (9th Cir.1993); *Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago*, 837 F.Supp. 892, 897 (N.D.Ill.1993); *Steinroe Income Trust v. Continental Bank*, 238 Ill.App.3d 660, 179 Ill.Dec. 671, 606 N.E.2d 503, 505 (1992); *Horovitz v. Roadworks of Great Neck, Inc.*, 76 N.Y.2d 975, 563 N.Y.S.2d 735, 565 N.E.2d 484, 485 (1990); *First Fidelity Bank v. First Interstate Bank of Or.*, 716 F.Supp. 1359, 1362 (D.Or.1989); *G.F.D. Enter., Inc. v. Nye*, 37 Ohio St.3d 205, 525 N.E.2d 10, 20

(1988); *Life Ins. Co. of Va. v. Snyder*, 141 N.J.Super. 539, 358 A.2d 859, 862 (Dist.Ct.1976); *Nida v. Michael*, 34 Mich.App. 290, 191 N.W.2d 151, 155 (1971); *Stone & Webster Engineering Corp. v. First Nat'l Bank & Trust Co. of Greenfield*, 345 Mass. 1, 184 N.E.2d 358, 363 (1962).

**3.** Sections 3.417 and 4.207 are parallel provisions. Section 3.417 establishes warranties for the transfer of commercial paper not collected through the banking system. Section 4.207 establishes the same warranties for the collection of items through the banking system. Act of May 24, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2428, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex. Gen. Laws 4582, 4601 (current version at TEX. BUS. & COM.CODE ANN. § 4.207 & 4.208 (Tex.UCC) (Vernon Supp.1996)). Act of May 24, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2449, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 4, 1995 Tex. Gen. Laws 4582, 4631 (current version at TEX. BUS. & COM.CODE ANN. § 4.207 & 4.208 (Tex.UCC) (Vernon Supp.1996)).

The issue of whether a drawer is an "other payor" was addressed in *G.F.D. Enterprises, Inc. v. Nye*, 37 Ohio St.3d 205, 525 N.E.2d 10 (1988). In *Nye*, a bookkeeper for G.F.D. Enterprises embezzled funds from her employer and deposited those funds in her account. The employer sued the collecting bank alleging breach of the presentment warranties. The court concluded that G.F.D. Enterprises could not bring a direct action against the collecting bank for breach of the presentment warranties. In reaching its decision, the court noted that the drafters of the UCC intended that the drawer sue his drawee bank for improper payment because the drawee bank is in a better position to raise any defense against the drawer than is a collecting bank. *Id.*, 525 N.E.2d at 20.

The UCC was intentionally structured so that a drawer could sue only its drawee bank and the drawee bank, in turn, could sue the collecting bank. As noted above, there are legitimate policy reasons for imposing such a requirement. For these reasons, we conclude that TSC is not an "other payor" within the meaning of section 4.207 and, thus, that TSC cannot bring a direct action against SOA for breach of the presentment warranties. The trial court did not err in concluding otherwise. TSC does not have a direct cause of action against SOA for breach of the presentment warranties. We overrule TSC's seventh point of error.

## INTENDED PAYEE DEFENSE

In its summary judgment motion, SOA alternatively asserted that section 3.405(a)(3) precluded TSC from recovering on its causes of action. In its ninth point of error, TSC contends the trial judge erred in granting summary judgment because fact issues exist on SOA's intended payee defense. Specifically, TSC contends that section 3.405(a)(3) of the Texas UCC, commonly known as the padded payroll rule, does not apply to the facts of this case, and the trial judge erred in concluding otherwise. We disagree.

■ Under the padded payroll rule, an indorsement by any person in the name of a named payee is effective if an agent or employee of the maker or drawer has supplied the maker with the name of the payee intending the latter to have no such interest. Act of May 24, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2424, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex. Gen. Laws 4582, 4597 (current version at TEX. BUS. & COM.CODE ANN. § 3.404 (Tex.UCC) (Vernon Supp. 1996)). Application of section 3.405 precludes causes of action for negligence, conversion, and money had and received. *See Clinton Weilbacher Builder, Inc. v. Kirby State Bank*, 643 S.W.2d 473, 476 (Tex.App.— San Antonio 1982, no writ). Comment four to section 3.405(a)(3) indicates that the purpose behind the rule is to place the loss resulting from a faithless employee on the employer as a risk of its business. The reason for allocating the loss on the employer is two-fold. First, the employer is normally in a better position to prevent such forgeries by reasonable care in the selection and supervision of its employees. Second, the employer is normally in a better position to cover any potential losses with fidelity insurance and the cost of such insurance is more appropriately an expense of the employer's business. *See* TEX. BUS. & COM.CODE ANN. § 3.405 cmt. 4 (Tex.UCC) (Vernon 1994), *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex. Gen. Laws 4582, 4597 (current version at TEX. BUS. & COM. CODE ANN. § 3.404 (Tex.UCC) (Vernon Supp. 1996)).

In its summary judgment motion, SOA contended that this was a classic case of the faithless employee and the ideal case for application of section 3.405(a)(3). TSC countered that section 3.405 was not applicable for three reasons. First, the record contained no summary judgment evidence indicating Pratt intended the payee to have no interest at the time the TSC officer signed the check. Second, when Pratt prepared checks payable to a version of the AAA name, she in fact intended for the AAA entity to have an interest. Third, many of the indorsements were not in the name of the named payee as required by section 3.405(a). On appeal, TSC makes the same arguments it made in its summary judgment response. For the reasons that follow, we cannot agree with TSC's contentions.

For section 3.405(a)(3) to apply, Pratt must have (1) supplied the name of the payee to TSC and (2) intended for the payee not to have an interest in the check. Two types of checks are present in this case. First, there are checks prepared in some version of the AAA name. Second, there are checks prepared in the name of an actual vendor for an actual indebtedness. We will address the two groups separately.

■ With respect to the first group of checks, TSC argues section 3.405 does not cover these checks because AAA Lawn Maintenance Service & Repair did in fact exist. We disagree. The fact that AAA existed does not preclude application of section 3.405. In a case similar to this one, an employee arranged to have dividend checks made payable to two dummy corporations he controlled. *Prudential–Bache Sec., Inc. v. Citibank, N.A.,* 4 U.C.C. Rep. Serv.2d 533, 533–34, 1987 WL 257803 (N.Y.Sup.Ct.1987), *aff'd,* 141 A.D.2d 353, 529 N.Y.S.2d 983 (N.Y.App. Div.1988), *order aff'd. as modified,* 73 N.Y.2d 263, 539 N.Y.S.2d 699, 536 N.E.2d 1118 (1989). The employee deposited the funds in the accounts of the dummy corporations at the defendant collecting bank. The court held that section 3.405(a)(3) applied even though the corporations actually existed and the employee intended for the corporations to receive these funds. *Id.* at 535.

A similar conclusion was reached by the court in *Dorsey v. Houston National Bank,* 338 S.W.2d 540, 542 (Tex.Civ.App.—Waco 1960, writ ref'd). There, an employee was one of two required signatories on company checks. The employee prepared checks to former employees who were owed nothing and obtained the other required signature on the checks. The employee then indorsed the checks and cashed them. The company sued the bank that cashed the checks. In arguing it was not liable for the amount of the underlying checks, the bank relied on the predecessor to section 3.405 [4] which made an instrument a bearer instrument when it is payable to the order of a fictitious person, and such fact is known to the person making it so payable. *Id.* at 542. Although the

employer argued that section 3.405's predecessor was inapplicable because the payees, former employees, were not fictitious, the Waco Court disagreed, holding that the payees were fictitious because they were not *legitimate* payees. *Id.* at 542.

As with the dummy corporations in *Prudential–Bache* and the former employees in *Dorsey,* AAA was merely a conduit for Pratt's embezzlement. The fact that AAA was an entity on paper misses the point of section 3.405. The critical fact is that AAA was not a legitimate payee of TSC, and TSC did not intend for AAA to have any funds. *See Dorsey,* 338 S.W.2d at 542. Thus, we conclude, based on the reasoning in *Prudential–Bache* and *Dorsey,* that the first group of checks was covered under section 3.405.

■ We reach a similar conclusion with respect to the second group of checks—*i.e.,* those that were prepared in the name of an actual vendor for an actual indebtedness. Although TSC argues that section 3.405(a)(3) does not cover these checks because there is no summary judgment evidence that Pratt did not intend the named vendor to have an interest in the checks at the time the checks were signed, we disagree. A similar argument was raised and rejected in *Clinton Weilbacher Builder,* 643 S.W.2d at 476. In that case, an employee at Clinton Weilbacher Builder forged the payees' signatures on thirty-two checks drawn on the company account and made payable to various creditors. *Id.* at 474. Clinton Weilbacher Builder sued its bank, and the bank defended on the basis of the padded payroll rule. *Id.* Like TSC, Clinton Weilbacher Builder claimed section 3.405(a)(3) did not apply because there was no evidence the employee intended that the payees have no interest in the proceeds at the time she supplied their names to Clinton Weilbacher Builder. *See id.* at 475. The court disagreed. In reaching its decision, the court noted that the summary judgment evidence showed that the payees had already been paid for services rendered and that this evidence could lead to only one conclusion— that the employee did *not* intend the named

<hr>

4. Act of April 27, 1961, 57th Leg., R.S., ch. 109, § 1, 1961 Tex. Gen. Laws 211, *repealed by,* Act of May 19, 1965, 59th Leg., R.S., ch. 721, § 10–102, 1965 Tex. Gen. Laws 1, 179.

payees to have an interest in the proceeds at the time she supplied their name to her employer. *Id.* at 476.

Evidence similar to that in *Clinton Weilbacher Builder* exists in this case. Robert Nunez, TSC's controller at the time of Pratt's embezzlement, testified in his deposition that the vendors whose names appeared on the subject checks had already been paid. According to Nunez, Pratt simply recycled invoices so they were put through the system twice. We hold based on this record that the summary judgment evidence conclusively established that Pratt did not intend for the vendors to have an interest in the proceeds at the time she supplied their names.

█ TSC next contends the padded payroll rule does not apply because the indorsements are not in the name of the named payees. A discrepancy between the payee and the indorsement does not preclude application of section 3.405(a)(3). *See British Caledonian Airways,* 819 F.2d at 599–600. Applying section 3.405 even where slight discrepancies between the named payee and the indorsement exist furthers the policy of the section to place the risk of loss for a faithless employee on the employer. *Id.* Accordingly, we reject TSC's argument that the rule does not apply because the indorsements were not in the named payees' names.

We conclude that the padded payroll rule applies in this case. The trial judge properly concluded that section 3.405(a)(3) places the loss on TSC for all of the indorsed checks. Like section 3.418, section 3.405 precludes TSC's causes of action for negligence, conversion and money had and received. We overrule TSC's ninth point of error.

We overrule TSC's first point of error. Because of our disposition of TSC's first, second, third, fourth, fifth, sixth, seventh, and ninth points of error, we do not reach TSC's eighth and tenth points of error. *See* TEX.R.APP. P. 90(a).

We affirm the trial court's judgment.